Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938

*Proposed Counsel for Opus West Corporation,
Opus West Construction Corporation, and
O.W. Commercial, Inc.*

Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 214-702-4061
Facsimile: 214-723-5345

*Proposed Counsel for Opus West LP and
Opus West Partners, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **OPUS WEST CORPORATION, *et al.*,**[1] | Case No. 09-_____ ( ) |
| **Debtors.** | **Joint Administration Pending** |

## JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS, AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby jointly move this Court (the "**Motion**") pursuant to Sections 105(a), 361, 362, 363, and

552 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 363 of the Federal

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Opus West Corporation (1533); Opus West Construction Corporation (5917); Opus West LP (5535); Opus West Partners, Inc. (5537); and O.W. Commercial, Inc. (9134).

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 1
DAL 77,575,599v4

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001(c) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**") for entry of interim and final orders:  (I) approving the sale of the Debtors' interests in certain interests free and clear of liens, claims, interests, restrictions and encumbrances; (II) establishing bidding procedures and scheduling an expedited hearing relating to the approval thereof; (III) approving the form of notice related to the auction; and (IV) scheduling a sale approval hearing immediately after the auction. **Although this Motion is filed on the first day of the cases, the Debtors are only requesting at the first-day hearing that the Court set a hearing on or before July 14, 2009, to approve the Bidding Procedures and various bid protections and to set the Auction and other related dates.  No substantive relief hereunder is being sought at the first-day hearing.** In support of this Motion, the Debtors respectfully states to the Court as follows:

## I.
## STATUS OF THE CASE AND JURISDICTION

1.     On the date hereof (the "**Petition Date**"), the Debtors filed a voluntary Chapter 11 bankruptcy petition under the Bankruptcy Code.

2.     The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these cases.

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 2
DAL 77,575,599v4

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.  This is a core

matter within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief sought herein are Sections 105(a), 361, 362,

363, and 552 of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 4001(c).

## II.
## BACKGROUND

### Operational Overview

6.      Opus West Corporation (**"Opus West"**), with its affiliates, is a full-service real

estate development firm that focuses on acquiring, constructing, operating, managing, leasing,

and/or disposing of real estate development projects primarily located in the western United

States.  Although incorporated in Minnesota, Opus West and its affiliates are headquartered in

Phoenix, Arizona, with additional offices in Austin, Houston, and Addison, Texas, as well as

Irvine, Sacramento, and Pleasanton, California.  With in-house expertise in office, industrial,

retail, multifamily, government, and institutional projects, Opus West and its affiliates have

developed more than 52.7 million square feet of space since Opus West started operations in

1979.  Collectively, as of the Petition Date, the Debtors employ approximately 37 people.

7.      Opus West and its affiliates are comprised of various joint ventures and wholly-

owned subsidiaries that serve as holding companies, special purpose entities, construction

companies, and project-level operating companies.  These entities operate on an integrated basis

with centralized management and administration in Phoenix.  Opus West's debtor affiliates

include: Opus West Construction Corporation (**"O.W. Construction"**), O.W. Commercial, Inc.

(**"O.W. Commercial"**), Opus West LP (**"OWLP"**), and Opus West Partners, Inc. (**"O.W.**

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 3**
DAL 77,575,599v4

Partners"). O.W. Construction, O.W. Commercial, and O.W. Partners are wholly owned subsidiaries of Opus West. In turn, OWLP is owned by Opus West (1%) and O.W. Partners (99%). Opus West's interests are held 100% by its parent company, Opus Corporation.

8.    O.W. Construction was formed in 1959 for the purpose of constructing Opus West and its affiliates' real estate development projects.

9.    O.W. Commercial was formed in 2005 as a special purpose entity for the purpose of holding commercial condominium projects developed by Opus West and its affiliates.

10.    OWLP was formed in 2002 as a limited partnership to develop real estate projects in the State of Texas.

11.    O.W. Partners was also formed in 2002 as a special purpose entity for the purpose of holding all of the limited partnership interests in which Opus West participates.

12.    The Debtors' assets include interests in approximately 50 commercial and residential real estate projects located across California, Arizona, and Texas. These projects include condominium, office, industrial, apartment, and retail projects in various stages of development.

**Financial Overview**

13.    As of May 31, 2009, Opus West and its debtor and non-debtor affiliates reported approximately $1,275,334,000 in total assets and approximately $1,462,328,000 in total liabilities. Opus West and its debtor and non-debtor affiliates had combined revenues in fiscal year 2008 of approximately $405,136,000.

14.    Pre-petition, Opus West guaranteed all of its subsidiaries' and joint ventures' loan agreements. In the aggregate, Opus West has guaranteed over $1,145,269,000 for various

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 4
DAL 77,575,599v4

projects.  Due to the present economic crisis and the unavailability of financing, almost all of these loans are currently in default.

15.    A more detailed factual background of the Debtors' businesses and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Affidavit of John Greer in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference.

**Ownership Interests Proposed to be Sold**

16.    The Debtors currently own interests (the "**Interests**") in the special purpose entities named and listed in Exhibit "A" attached to this Motion.  The special purpose entities listed therein own certain real estate projects .

17.    Potential purchasers have expressed an interest in acquiring the Interests (the "**Potential Purchasers**").  However, none of the Potential Purchasers have been willing to submit an acceptable offer for the Interests or proceed with a sale process.  The Debtors believe that the sale of the Interests proposed herein is a fair and reasonable sale and that an auction, conducted by the Court (the "**Auction**"), will test and maximize the Interests' value.

III.
**REQUEST FOR EXPEDITED HEARING ON BIDDING PROCEDURES**

18.    Due to the current economic market, the Debtors request that the Court enter an interim order (a) approving certain bidding procedures (the "**Bidding Procedures**"), (b) authorizing and scheduling the Auction (hereinafter defined), (c) setting the hearing approving the sale of the Interests to be held on August 26, 2009, and (d) granting related relief.  A proposed interim order, together with a copy of the proposed Bidding Procedures attached thereto, is attached to this Motion as Exhibit "B" and incorporated herein by reference.  In order

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 5
DAL 77,575,599v4

to ensure the timely distribution of Bidding Procedures to Potential Purchasers, as well as provide such Potential Purchasers adequate time to conduct due diligence relating to the Interests, the Debtors request that the Court schedule a hearing approving the Bidding Procedures, on an expedited basis, before July 14, 2009 (the "**Bidding Procedures' Hearing Date**").

## IV.
## THE BIDDING PROCEDURES

19.     To ensure that fair and equitable value is attributed to the Debtors' Interests, and to further test the Interests' market value, the Interests will be sold to the best and highest qualified bidder through the solicitation of competing bidders.  By subjecting the Interests to competing bids, the Bankruptcy Court ensures that the value of the Interests are maximized for the benefit of holders of the Interests.

20.     The Bankruptcy Court will retain authority to control the bidding process to ensure that other concerns relevant to the sale are addressed.  For example, competing bids must not only be "higher" in the sense that the proposed purchase price is greater than the original price, but they must also be "better" in that the overall terms of the bid must improve the previous offer.

21.     The Bidding Procedures ensure that any other bid will be higher and better.  At least five (5) business days in advance of the Auction, each prospective bidder must: (a) execute and submit a Confidentiality Agreement; (b) submit a modified bill of sale (the "**Modified Bill of Sale**") reflecting proposed revisions to the form bill of sale attached as an exhibit to the Bidding Procedures, the terms of which shall not be burdensome to the Debtors, as seller, in any material respect; (c) deposit thirty (30%) percent of the offer price in cash or its equivalent (the

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 6
DAL 77,575,599v4

"**Deposit**") as earnest money; and (d) provide proof that such bidder is "financially qualified" and able to consummate the purchase of the Interests, as determined in the sole discretion of the Debtors (the "**Financial Qualification Requirement**," and together with the Confidentiality Agreement, the Bill of Sale, and the Deposit, the "**Pre-Auction Items**").

22.     The Debtors propose that the Court approve the Bidding Procedures included in Exhibit "B" for the Auction.

23.     The Debtors also propose that the Court approve the form of the notice (the "Notice") that is to be sent to interested parties (the "**Notice Parties**"), a copy of which is attached hereto as Exhibit "C" and incorporated herein by reference.

24.     The Debtors request that the Auction, and the hearing approving the sale of the Interests to the highest and best bidder, be held on August 27, 2009 (the "**Sale Approval Hearing**"), so that closing can occur on or before August 31, 2009.

25.     The Debtor request that the Court proceed with the Sale Approval Hearing immediately after the Auction.

## V.
### THE HIGHEST AND BEST PURCHASER SHOULD BE AFFORDED ALL PROTECTIONS UNDER BANKRUPTCY CODE SECTION 363(M) AS A GOOD FAITH PURCHASER

26.     Should any Potential Purchaser's qualified offer arise and result in the highest and best offer for the Interests, such offer will be the result of arms' length negotiations between the Debtors and the Potential Purchaser. Therefore, the Debtors request the Court find that any Potential Purchaser determined to be the highest and best bidder for the Interests be afforded all the protections of Section 363(m) of the Bankruptcy Code as a good faith purchaser.

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 7
DAL 77,575,599v4

# VI.
## ARGUMENTS AND AUTHORITIES

27.     The Court may approve the sale of the Interests outside the ordinary course of business. *See* 11 U.S.C. § 363.

### A.     Disposition of the Interests is Authorized Under Section 363(b) of the Bankruptcy Code.

28.     Section 363(b)(1) of the Bankruptcy Code provides that a Debtors, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29.     Disposition of the Interests should be authorized pursuant to Section 363(b) of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) *(citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (N.D. Ga. 1985) ("[A] Debtors seeking approval for [a sale under section 363(b)] bears the burden of articulating a sound business justification..."); *In re Tom's Foods, Inc.*, 2005 WL 3022022 at *2 (Bankr. M.D. Ga. 2005) ("It is now generally accepted that section 363 allows such sales in chapter 11, provided, however that the sale proponent demonstrates a good, sound business justification for conducting the sale..."); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D.

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 8
DAL 77,575,599v4

Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung and Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the assets; and whether the asset is decreasing or increasing in value.

124 B.R. at 176. The court in *In re Tom's Foods* further held that, in addition to demonstrating a sound business justification, the sale proponent must also show "that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable." 2005 WL 3022022 at *2.

30.     The Debtors have proposed to sale the Interests after thorough consideration of all viable alternatives, and have concluded that such disposition is supported by a number of sound business reasons. The Debtors have determined that a disposition of their Interests herein provides the best and most efficient means for the Debtors to maximize the value of their estates and avoid further deterioration in value.

31.     As explained above, the Debtors have extensively considered marketing the Debtors' Interests and propose to conduct the Auction process related to the Interests in accordance with this Motion, which proposes to implement procedures designed to maximize the value that will be realized from the disposition of the Interests.

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 9**
*DAL 77,575,599v4*

32.    Based on the foregoing, the disposition of the Interests is justified by sound business reasons and is in the best interests of the Debtors and their estates. Accordingly, pursuant to Section 363(b) of the Bankruptcy Code, the Debtors request approval of the sale of the Interests to the highest and best qualified bidder as set forth herein.

**B.    Sale of the Interests Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code.**

33.    Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

> (2)    such entity consents;

> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4)    such interest is in a bona fide dispute; or

> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34.    As quoted above, Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in Section 363(f), is not defined in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor*, JV, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." *Id.*, at 258. The court observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 10
DAL 77,575,599v4

towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).

35.     As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of Section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

36.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Interests free and clear of all interests, except with respect to any interests that are Assumed Liabilities under the Bill of Sale. *See In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs.*, Inc. v. Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

37.     The Debtors submit that each interest that is not an Assumed Liability satisfies at least one of the five conditions in Section 363(f) of the Bankruptcy Code. The Debtors accordingly request authority to convey the Interests to Purchaser Purchasers, free and clear of all interests (except as otherwise provided in the Bill of Sale).

38.     Accordingly, this Court should approve the sale of the Interests to one or more highest and best bidders as determined at the Auction free and clear of interests under Section 363(f) of the Bankruptcy Code.

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 11
DAL 77,575,599v4

**C.    The Bidding Procedures Provided Herein Are Consistent
       and Appropriate in the Context of Bankruptcy Transactions.**

39.    Courts have made clear that a debtor's business judgment is entitled to substantial

deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., In re*

*Friedman's, Inc., 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); Official Committee of Subordinated*

*Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R, 650, 656-*

57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is

to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In*

*re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997)* (in bankruptcy sales, "a

primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated*

*Resources,* 147 B.R. at 659 (same); *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta*

*Packaging Products, Inc.),* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).

40.    In that regard, courts uniformly recognize that procedures intended to enhance

competitive bidding are consistent with the goal of maximizing the value received by the estate

and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re*

*Montgomery Ward Holding Corp.,* Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re*

*Fruehauf Trailer Corp.,* Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated*

*Resources,* 147 B.R. at 659; *In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 131 (Bankr.

N.D. Ga. 1988) ("Competitive bidding yields higher offers and thus benefits the estate.

Therefore, the objective is 'to maximize the bidding, not to restrict it'").

41.    The Bidding Procedures proposed herein will provide a framework for the

Debtors to entertain qualified bids for the Interests and, if it receives such qualified bids, to

conduct the Auction in a fair and open fashion that will encourage participation by financially

JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 12
DAL 77,575,599v4

capable bidders who demonstrate the ability to close a transaction. This should increase the

likelihood that the Debtors will receive the greatest possible consideration for the Interests. The

Bidding Procedures also set forth a schedule for achieving these objectives in an expeditious

manner, balancing the Debtors' desire to maximize recovery for the benefit of the estates, with

the need to move quickly to avoid any further deterioration in value.

**D.     The Purchaser is a Good Faith Purchaser and are Entitled to the
         Full Protections of Section 363(m) of the Bankruptcy Code.**

      42.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed
> pending appeal.

11 U.S.C. § 363(m).

      43.     While the Bankruptcy Code does not define "good faith," the Third Circuit in

*Abbotts Dairies*, has stated:

> [t]he requirement that a purchaser act in good faith . . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). *See also In re Miami General Hospital, Inc.*, 81 B.R. 682,
688 (S.D. Fla. 1988) ("The misconduct at a judicial sale that would destroy a buyer's good faith
'involved fraud, collusion between the purchasers and other bidders or the trustee, or an attempt
to take generally unfair advantage of other bidders.'") (*quoting Abbotts Dairies*, 788 F.2d at
147).

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 13**
DAL 77,575,599v4

44.    Moreover, the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtors-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

45.    A sale of Interests through an auction process is presumptively at market price and, therefore, entitled to deference. *See In re Mama's Original Foods, Inc.*, 234 B.R. 500, 504 (Bankr. C.D. Cal. 1999). Based thereon, the Debtors believe the process, as proposed, allows the Debtors an opportunity to test the market value of the Interests and to attempt to realize additional value from the sale of the Interests. Accordingly, the Court should approve the Sale.

46.    Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith…" 11 U.S.C. § 363(m). The Bidding Procedures have been proposed in good faith. Therefore, any Potential Purchaser submitting a qualified best offer or should be given the benefit of all the good faith protections afforded to a purchaser by Section 363(m) of the Bankruptcy Code.

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING IMMEDIATELY AFTER AUCTION - Page 14**
*DAL 77,575,599v4*

**WHEREFORE, PREMISES CONSIDERED**, the Debtors respectfully request the Court enter an order (i) authorizing the sale of the Interests, free and clear of liens, claims, interests, restrictions and encumbrances; (ii) approving the Bidding Procedures and the Bid Procedures' Hearing Date; (iii) scheduling a sale approval hearing on or before August 27, 2009, in order to allow closing to occur by August 31, 2009, to the highest and best qualified bidder immediately after the Auction, and (iv) granting such other relief, whether in law or in equity, as is just under the circumstances.

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 15**
*DAL 77,575,599v4*

Dated:  July 6, 2009

Respectfully Submitted,

 /s/  Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938
E-mail:  jessupc@gtlaw.com
        whiteb@gtlaw.com
        elwoodb@gtlaw.com

*Proposed Counsel for Opus West Corporation,*
*Opus West Construction Corporation, and*
*O.W. Commercial, Inc.*

-and-

 /s/  Peter Franklin
Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 214-702-4061
Facsimile: 214-723-5345
E-mail:  pfranklin@fslhlaw.com
        dskierski@fslhlaw.com
        elovall@fslhlaw.com

*Proposed Counsel for Opus West LP and*
*Opus West Partners, Inc.*

**JOINT MOTION OF THE DEBTORS FOR ORDERS: (I) AUTHORIZING THE SALE OF THEIR INTERESTS IN
CERTAIN ENTITIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, RESTRICTIONS AND
ENCUMBRANCES; (II) ESTABLISHING BIDDING PROCEDURES AND SCHEDULING AN EXPEDITED
HEARING RELATING TO THE APPROVAL THEREOF; (III) APPROVING THE FORM OF NOTICE RELATED
TO THE AUCTION AND SALE HEARING; AND (IV) SCHEDULING SALE APPROVAL HEARING
IMMEDIATELY AFTER AUCTION - Page 16**
DAL 77,575,599v4

**EXHIBIT "A"**

**List of Interests**

# Exhibit A

| Debtor/Owner of Interest | Special Purpose Entity | % Interest for Sale | Property Type | Property Name | Location | Size |
|---|---|---|---|---|---|---|
| Opus West Corporation | OWP Point II Office, L.L.C. | 100% | Industrial | Opus Point Phase II | Carlsbad, CA | 113,490 SF |
| Opus West Corporation | Arbowest, L.L.C. | 50% | Land | Phoenix Downtown Land | Phoenix, AZ | .5 Acres |
| Opus West Corporation | OWP Gateway Land, L.L.C. | 100% | Land | Gateway Corporate Center Land | Sacramento, CA | 13.0 Acres |
| Opus West Corporation | OWP Haven Land, L.L.C. | 100% | Land | Haven Point Land | Rancho Cucamonga, CA | 9.0 Acres |
| Opus West Corporation | OWP Point Land, L.L.C. | 100% | Land | Opus Point Phase II Land | Carlsbad, CA | 8.6 Acres |
| Opus West Corporation | OWP Stanford Land, L.L.C. | 100% | Land | Stanford Ranch Land | Rocklin, CA | 19.8 Acres |
| Opus West Corporation | OWP Westlake Land, L.L.C. | 100% | Land | Westlake North Land | Westlake Village, CA | 21.0 Acres |
| Opus West Corporation | OWR Pointe Parkway, Inc. | 75% | Land | South Mountain Land | Phoenix, AZ | 6.8 Acres |
| Opus West Corporation | OWR Cypress, Inc. | 1% | Multifamily | Broadstone Cypress | Cypress, TX | 312 Units |
| Opus West Corporation | OWR Galleria, Inc. | 1% | Multifamily | Broadstone Parkway | Dallas, TX | 333 Units |
| Opus West Corporation | OWR Walker Commons, Inc. | 1% | Multifamily | Broadstone Walker Commons | League City, TX | 352 Units |
| Opus West Corporation | OWR Woodbridge, Inc. | 1% | Multifamily | Broadstone Woodbridge | Wylie, TX | 303 Units |
| Opus West Corporation | OWR Fort Bend, Inc. | 1% | Multifamily | Wynhaven Crossings | Houston, TX | 300 Units |
| Opus West Corporation | OWR Hill Country, Inc. | 1% | Multifamily | Alexan Galleria | Bee Cave, TX | 309 Units |
| Opus West Corporation | Irvine Center Partners III, L.L.C. | 65% | Office | Opus Center Irvine III | Irvine, CA | 314,074 SF |
| Opus West Corporation | OWC Northgate, Inc. | 100% | Office | Northgate Corporate Center | Phoenix, AZ | 131,645 SF |
| Opus West Corporation | OWP Camarillo Office, L.L.C. | 100% | Office | Camarillo Ranch | Camarillo, CA | 124,141 SF |
| Opus West Corporation | OWP Glendale Office, L.L.C. | 100% | Office | Glendale Corporate Center | Glendale, AZ | 188,390 SF |
| Opus West Corporation | OWP Point Office, L.L.C. | 100% | Office | Opus Point Phase I Office | Carlsbad, CA | 165,508 SF |
| Opus West Corporation | PC 101, Inc. | 100% | Office | Pima Center I & II, IIIA, IIIB, IIIC | Scottsdale, AZ | 466,744 SF |
| Opus West Corporation | Pima Center 101, L.L.C. | 70% | Office | Pima Center IE | Scottsdale, AZ | 80,157 SF |
| Opus West Corporation | OWC Tempe, Inc. | 61% | Office | Tempe Gateway | Tempe, AZ | 263,303 SF |
| Opus West Corporation | OWR 77th Avenue, Inc. | 50% | Receivable | 77th Avenue | Peoria, AZ | $200,000 |
| Opus West Corporation | Stockton Receivable, L.L.C. | 100% | Receivable | Stockton Receivable | Stockton, CA | $985,000 |
| Opus West Corporation | OWP Commons Retail, L.L.C. | 100% | Retail | Commons at Chino Hills | Chino Hills, CA | 152,939 SF |
| Opus West Corporation | Shoppes At Chino Hills, Inc. | 100% | Retail | Shoppes at Chino Hills | Chino Hills, CA | 380,000 SF |
| Opus West Corporation | Southwest Gateway, Inc. | 100% | Retail | Mill Crossing | Chandler, AZ | 155,705 SF |
| Opus West Corporation | Premier CR, L.L.C. | 43% | Various | Various | Various | N/A |
| Opus West Corporation | Premier VI, L.L.C. | 44% | Various | Various | Various | N/A |
| Opus West Corporation | Premier VII, L.L.C. | 37% | Various | Various | Various | N/A |
| Opus West Corporation | Premier VIII, L.L.C. | 42% | Various | Various | Various | N/A |
| Opus West Commercial, Inc. | OWP Fremont Tech, L.L.C. | 100% | Office Condos | Fremont Tech Center | Fremont, CA | 102,165 SF |
| Opus West Commercial, Inc. | OWP Point Office Condos, L.L.C. | 100% | Office Condos | Opus Point Phase I Office Condos | Carlsbad, CA | 78,253 SF |
| Opus West LP | OWP Addison Office, L.L.C. | 100% | Office | Two Addison Circle | Addison, TX | 198,358 SF |
| Opus West LP | OWP Fort Bend Retail, L.L.C. | 100% | Retail | Fort Bend Crossing | Houston, TX | 107,473 SF |
| Opus West Partners, Inc. | ODP Stockton, L.L.C. | 10% | Industrial | Opus Logistics Center | Stockton, CA | N/A |
| Opus West Partners, Inc. | Broadstone Cypress, L.P. | 59% | Multifamily | Broadstone Cypress | Cypress, TX | 312 Units |
| Opus West Partners, Inc. | Broadstone Galleria, L.P. | 59% | Multifamily | Broadstone Parkway | Dallas, TX | 333 Units |
| Opus West Partners, Inc. | Broadstone Walker Commons, L.P. | 59% | Multifamily | Broadstone Walker Commons | League City, TX | 352 Units |
| Opus West Partners, Inc. | Broadstone Woodbridge, L.P. | 59% | Multifamily | Broadstone Woodbridge | Wylie, TX | 303 Units |
| Opus West Partners, Inc. | Fort Bend Apartments, L.P. | 69% | Multifamily | Wynhaven Crossings | Houston, TX | 300 Units |
| Opus West Partners, Inc. | Hill Country Apartments, L.P. | 69% | Multifamily | Alexan Galleria | Bee Cave, TX | 309 Units |
| Opus West Partners, Inc. | Opus Real Estate CA VII Rocklin, L.P. | 1% | Office | Rocklin Corporate Plaza | Rocklin, CA | 219,000 SF |
| Opus West Partners, Inc. | Opus Real Estate CA VII SG II, L.P. | 1% | Office | Sacramento Gateway II | Sacramento, CA | 115,200 SF |

## EXHIBIT "B"

**Interim Order and Bid Procedures**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **OPUS WEST CORPORATION,** *et al.,*[1] | Case No. 09-_____ (   ) |
| **Debtors.** | **Joint Administration Pending** |

**ORDER (1) APPROVING BIDDING PROCEDURES IN ADVANCE OF AUCTION, (2) APPROVING FORM AND MANNER OF NOTICE OF PROPOSED CURE AMOUNTS, AUCTION, AND FINAL HEARING, AND (3) GRANTING RELATED RELIEF**

Upon the joint motion (the "**Motion**") filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") requesting entry of an order (the "**Procedures Order**") pursuant to Sections 105, 363(b), (f), and (m), and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):   (1) approving the proposed Bidding Procedures (as defined below) related to the disposition of certain Interests of the Debtors; (2)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Opus West Corporation (1533); Opus West Construction Corporation (5917); Opus West LP (5535); Opus West Partners, Inc. (5537); and O.W. Commercial, Inc. (9134).

ORDER (1) APPROVING BIDDING PROCEDURES IN ADVANCE OF AUCTION,
(2) APPROVING FORM AND MANNER OF NOTICE OF PROPOSED CURE AMOUNTS,
AUCTION, AND FINAL HEARING, AND (3) GRANTING RELATED RELIEF - PAGE 1

approving the form, extent, and manner of notice of the Auction, and Final Hearing (each as defined in the Bidding Procedures attached hereto as Exhibit "1" and incorporated herein by reference); and (3) granting related relief; the Court, having reviewed the Motion and the objections thereto and having heard the statements of counsel and considered the agreements of the parties and the evidence presented at a hearing before the Court on the Motion,

**FINDS AND CONCLUDES AS FOLLOWS:**

A.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The Debtors filed the Motion on July 6, 2009, proposing to sell certain interests (the "**Interests**") they own in certain special purposes entities listed on Exhibit "A" attached to the Motion, whether individually or as one or more packages, and seeking approval of certain bidding procedures related to the proposed sales.  All Bids will be analyzed on an Interest-by-Interest basis to determine highest and best qualified bid.

C.     The statutory and legal predicates for the relief sought in the Motion are Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014. The Court reserves all of the parties' rights with respect to objections to the potential sale under Section 363 of the Bankruptcy Code, and this Procedures Order does not constitute a ruling that the grounds for a sale under Section 363(f) of the Bankruptcy Code have or have not been satisfied.

D.     The Debtors have articulated good and sufficient reasons for approving the Bidding Procedures and the form and manner of notice of the proposed Cure Amounts, Auction, and the Final Hearing thereon.

E.      The Bidding Procedures (as defined below) attached hereto as <u>Exhibit "1"</u> are reasonable and appropriate, and represent the best method, under the circumstances, for maximizing the value of and return for the Interests.

F.      The relief granted herein is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest.

G.      The Debtors have complied with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Court hereby approves the bidding procedures (the "**Bidding Procedures**") attached hereto as <u>Exhibit "1"</u>.  Capitalized terms used herein that are not otherwise defined in this Procedures Order shall have the meaning given thereto in the Bidding Procedures.

3.      The Debtors are authorized and empowered to take such steps, expend such sums of money (to the extent authorized herein or under some other financing, cash collateral, or protective advances order), and do such other things as may be necessary to implement and effect the terms and requirements of this Procedures Order.

4.      The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Procedures Order.

5.      The Debtors shall solicit bids for their Interests individually and may solicit bids for groups of Interests with other of the Debtors (each such bid a "**Group Bid**" and collectively, "**Group Bids**"); provided, however, any Group Bid made by a Qualified Bidder shall detail the allocation of the gross bid price among the individual Interests covered by the Group Bid.  In determining highest and best offer, the bids shall be analyzed on an Interest-by-Interest basis.

6.      Any fully executed contract memorializing an agreement for the disposition of all or a part of the Interests by and between the Debtors and a purchaser shall be substantially in the form of Bill of Sale and shall be substantially consistent with the terms and conditions thereof.

7.      The Debtors are authorized to reject any bid or offer made by a Potential Bidder that, in the exercise of the Debtors' reasonable business judgment, after consultation with any unsecured creditors' committee appointed in this case, is not in conformity with the terms and conditions of the Bill of Sale or the Bidding Procedures.

8.      The failure of any objecting person or entity to timely file and serve its objection to the Motion, the transactions contemplated thereby, or the Debtors' consummation and performance of any Modified Bill of Sale, including the assumption and assignment of the Assigned Contracts, on or before the Objection Deadline shall be a bar to the assertion, at the Final Hearing or thereafter, of any objection to the Motion, the Auction, or the Debtors' consummation and performance of any Modified Bill of Sale, including the assumption and assignment of the Assigned Contracts, if authorized by the Court.

9.      Any sale of the Interests pursuant to the Motion, this Procedures Order, and any other order of the Court approving a sale shall be free and clear of all claims, including, but not limited to, claims, liens, interest, restrictions and encumbrances.

10.      The Debtors (a) shall determine, in their sole reasonable business judgment with respect to the Interests subject to a Qualified Bid, which Qualified Bid is the Winning Bid, after considering, among other things, the total consideration to be received by the Debtors' estate with respect to any Interest after taking into account the payment of liabilities to be assumed by each Qualified Bidder, (b) at the conclusion of the Auction, shall announce its determination as to the Winning Bidder submitting the Successful Bid with respect to any Interests, and (c) may

reject, at any time before entry of a final order granting the relief sought in the Motion, any Qualified Bid that, in the Debtors' sole reasonable business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, this Procedures Order, or the terms and conditions of the Bill of Sale, or (iii) contrary to the best interest of the Debtors, their respective estates, and/or their creditors.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

### End of Order ###

## Bidding Procedures

      **I.**     The following bidding procedures (the "**Bidding Procedures**") shall govern all proceedings relating to the Proposed Sale requested in that certain *Joint Motion of the Debtors for Orders: (I) Authorizing the Sale of Their Interests in Certain Entities Free and Clear of Liens, Claims, Interests, Restrictions and Encumbrances; (II) Establishing Bidding Procedures and Scheduling an Expedited Hearing Relating to the Approval Thereof; (III) Approving the Form of Notice Related to the Auction and Sale Hearing; and (IV) Scheduling Sale Approval Hearing Immediately After Auction* (the "**Motion**"):

    1.     **Assets to Be Sold.**  The assets the subject of these Bidding Procedures are the following: The Debtor's interests in certain special purpose entities named in <u>Exhibit "A"</u> attached to the Motion (collectively, the "**Interests**").

    2.     **Potential Bidders.**  Parties interested in participating in the bidding process ("**Potential Bidders**") may participate in the sale process. Potential Bidders will be required to deliver to the Debtors (to the extent not already delivered)) the following:

        (a)    An executed confidentiality agreement in form and substance acceptable to the Debtors; and

        (b)    The most current financial information evidencing the Potential Bidder's ability to close the transaction that meets with the Debtors' satisfaction (the "**Financial Information**"). As promptly as practicable after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to access information regarding the Interests. The Debtors reserve the right to refuse any Potential Bidder access to the due diligence materials if such access is deemed to be harmful to the Debtors' estates.

    3.     **Deadline for Submission of Bids**.  The deadline for Potential Bidders submitting any and all competing bids shall be on or before **August 21, 2009, at 5:00 p.m. (Prevailing Texas Time)** (the "**Bid Deadline**").

    4.     **Submission of Bids by Potential Bidders**.  In order to qualify as a potential Qualified Bidder (as defined below) of any Interests, a Potential Bidder must timely submit a written bid for a portion or all of the Interests that:

        (a)    Contains an executed bill of sale, a form of which is attached to hereto as <u>Exhibit "1"</u> (the "**Bill of Sale**"), marked to show all modifications thereto (a "**Modified Bill of Sale**"), wherein the Potential Bidder identifies:

            (i)    Which of the Interests the Potential Bidder seeks to acquire;

            (ii)    To the extent the total bid submitted relates to Interests in more than one entity, the allocation of such total bid between such Interests bid upon by such Potential Bidders; and

            (iii)   Which of the Debtors' executory contracts and unexpired leases related to the Interests such bidder seeks to assume and the proposed cure terms.

**EXHIBIT
1**

(b)     Includes a blacklined copy of the Modified Bill of Sale showing all changes made to the Bill of Sale.

(c)     Does not contain:

    (i)     A request for any type of expense reimbursement or similar type of payment; or

    (ii)    Any due diligence, financing contingencies, or other contingency of any kind not otherwise contained in the Bill of Sale.

(d)     Is accompanied by evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified Bill of Sale.

(e)     Is accompanied by financial and other information regarding such Potential Bidder's financial condition and capability to consummate the transactions contemplated by the Modified Bill of Sale and which will allow the Debtors to make a reasonable determination as to whether such written bid is a Qualified Bid, including, without limitation:

    (i)     The most current Financial Information of such Potential Bidder; or

    (ii)    If the Potential Bidder is an entity formed for the purpose of acquiring Interests then:

        (1)     The Financial Information of the equity holder(s) of the Potential Bidder or such other form of financial disclosure acceptable to the Debtors; and

        (2)     The written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of Interests.

(f)     Discloses fully the identity of each entity that will be bidding for Interests or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation.

(g)     Discloses fully the terms of the proposed employment of any of Debtors' employees, management, or officers in connection with such bid.

(h)     Is accompanied by a cash deposit in an amount equal to 30% of the total purchase price set forth in the Modified Bill of Sale (a "**Deposit**").

(i)     Permits the Debtors, pursuant to the local rules of the Court, to maintain reasonable access to its books and records following the closing of any sale of an Asset, as necessary for the administration of its bankruptcy case and estate.

(j)     Is delivered to (i) Debtors' counsel such that it is received by the close of business on the Bid Deadline by the following individuals:  (1) Clifton R.

Jessup, Jr., Greenberg Traurig, LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas, 75201; (2) Peter Franklin, Franklin Skierski Lovall Hayward, LLP, 10501 N. Central Expressway, Suite 106, Dallas, Texas, 75231, and (ii) counsel for any unsecured creditors' committee appointed in these cases (collectively, the "**Notice Parties**").

5.    **Qualification of Bid**. After a Potential Bidder has delivered a bid, the Debtors, will determine whether such Potential Bidder is a "**Qualified Bidder**" and such bid is a "**Qualified Bid**." Promptly after making such determination, the Debtors will advise such bidder of this determination. The Debtors reserve the right to reject any bid for whatever reason, including but not limited, to amount of any offer made by a Potential Bidder.

6.    **Auction**. The Debtors will conduct an auction with the Qualified Bidders to determine the highest or best bid for the Interests beginning at **10:00 a.m. (Prevailing Texas Time) on August 26, 2009, at the law offices of Greenberg Traurig, LLP located at 2200 Ross Avenue, Suite 5200, Dallas, Texas, 75201** (the "**Auction**"). The Auction may be adjourned by announcement of the adjournment at the Auction to those parties who appear at the Auction. Each Qualified Bid other than the opening bid is referred to as a "**Subsequent Bid**." At the conclusion of the Auction, or as soon thereafter as practicable, the Debtors shall: (a) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the process, the Debtors' estates, and the Transactions, including those factors affecting the speed and certainty of consummating the Transactions; (b) identify the highest or otherwise best offer(s) for each Asset received at the Auction (the "**Winning Bid**", and the bidder(s) making such bid, the "**Winning Bidder**"); and (c) designate any Back-Up Bidders (as defined below).

7.    **Auction Procedures**. The Auction will be conducted as follows:

(a)    The Auction will be conducted openly and all of the Debtors' creditors will be permitted to attend.

(b)    Only Qualified Bidders may make any subsequent Qualified Bids at the Auction.

(c)    At least one (1) business day prior to the Auction, each Qualified Bidder who has submitted timely a Qualified Bid or their representatives must inform the Debtors whether it or its representative intends to attend and to participate in the Auction. Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction.

(d)    All Qualified Bidders who have submitted a Qualified Bid or their representative must be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bids, upon requests, will be disclosed to all the bidders throughout the entire Auction.

(e)    All Qualified Bidders shall agree to remain ready, willing, and able to close a Transaction with respect to specific Interests under the terms of their last

Qualified Bid submitted at or before such Auction with respect to specific Interests as the back-up bidder (the "**Back-Up Bidder**" and such last bid, the "**Back-Up Bid**") until the earlier of (i) the close of the Transaction with respect to the specific Interests, or (ii) September 2, 2009, and shall close if the Winning Bidder fails to close, if, as, and when determined by the Debtors to be the new Winning Bidder.

(f)    The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order entered in connection herewith.

(g)    Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid. The bidding shall be in minimum increments to be set by the Debtors at the Auction. The Auction shall also continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge of the then-existing highest bid or bids.

(h)    Each Qualified Bidder shall represent and certify in writing at the Auction that it is not engaged in any collusion with respect to the bidding or sale.

(i)    Immediately after the Auction, the deposit for the Winning Bid shall be increased to 30% of the Winning Bid amount by the Winning Bidder.

(j)    Bidding at the Auction may be transcribed or videotaped.

8.    **Final Hearing**. A hearing to approve the Transactions (the "**Final Hearing**") will be held on **August 27, 2009, at [   :      [ ].m. (Prevailing Texas Time)**. All objections to any Transaction, including the assumption and assignment of any Assigned Contract and the proposed Cure Amount, shall be filed with the Bankruptcy Court and served on the Notice Parties on or before **August 21, 2009, at 5:00 p.m. (Prevailing Texas Time)** (the "**Objection Deadline**"). The Winning Bidder(s) and any Back-Up Bidder(s) must produce a competent witness at the Final Hearing (and any subsequent hearing) to provide testimony, if necessary, to establish adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder, to the extent required by Sections 365(b) of the Bankruptcy Code. At the Final Hearing, the Debtors will request that the Court approve each Transaction with regard to the Back-Up Bidder in the event the contemplated Transaction with the Winning Bidder does not timely close; in which case such Back-Up Bidder shall become the Winning Bidder without further order of the Court. At the hearing or promptly thereafter, the Court shall enter an order providing that the Interests are being purchased free and clear of all liens, claims, restrictions and encumbrances.

9.    **Notice of Auction and Final Hearing.** Within two (2) business days after the Court's entry of this Procedures Order, the Debtors (or its agents) shall serve a copy of the form of sale notice attached to the Motion as Exhibit "C" by first-class United States mail, postage pre-paid, upon (a) the Office of the United States Trustee, (b) any persons who

have entered an appearance in the case or otherwise in writing requested notice, (c) all entities known to have expressed an interest in a transaction with respect to the Interests during the past twelve months (12) months, (d) all entities known to have a present interest in the Interests; and (e) counsel for any committee(s) formed pursuant to Section 1102 of the Bankruptcy Code (if any hereafter is formed).

10.    **Cure Notice.**  On or before July 31, 2009, the Debtors shall file with the Court and serve by first-class United States Mail, postage pre-paid, on all non-debtor parties to executory contracts and unexpired leases that may be assumed and assigned (collectively, the "**Assigned Contracts**") a copy of the Cure Notice (as defined in the Motion) of (a) the Debtors' intent to make the Assigned Contracts available for assumption and assignment, and (b) the proposed cure amount (the "**Cure Amount**"). Each non-debtor party to an Assigned Contract shall have until August 21, 2009, to object to the assumption and assignment of the Assigned Contract or the Cure Amount. If objecting to the Cure Amount, the non-debtor party must state in its objection with specificity what Cure Amount it believes is required and the default to which it relates (with appropriate documentation in support thereof).  Any objection to the Cure Amounts that is timely filed and served by any non-debtor party to an Assigned Contract in accordance with the Cure Notice, and which is not otherwise resolved by the parties, shall be heard and resolved by the Court at the Final Hearing.  If no objection is timely filed and served, the Assigned Contract may be assumed and assigned to any purchaser on the closing date of the applicable Transaction, and the Cure Amount set forth in the Cure Notice shall be binding on the non-debtor party, notwithstanding anything to the contrary in any Assigned Contract or any other document.  The non-debtor party to the Assigned Contract shall be forever barred from asserting any other claims against the Debtors, any purchaser, or their property that arise out of or relate to the Assigned Contract, the Interests, or the Transaction.  Each non-debtor party to an Assigned Contract shall be served with a copy of the Court's order authorizing the assumption and assignment of any such contract(s) within five (5) business days after the entry of such order.  Within two (2) business days after the Auction, the Debtors shall file with the Court a list of which Assigned Contracts each Winning Bidder intends to have assumed and assigned to it.

11.    **Closing.**  The closing of a Transaction shall take place on or before **August 31, 2009**, except upon the waiver of this requirement by the Debtors.

12.    **Return of Deposits**.  The Deposits of all Qualified Bidders (except for the Winning Bidder) shall be held in a non-interest bearing escrow account.  Notwithstanding the foregoing, any Deposit, if any, submitted by the Winning Bidder, shall be applied against the payment of the Purchase Price upon closing of the Transaction with the Winning Bidder.  Except as otherwise provided in a Modified Bill of Sale and herein, all Deposits shall be returned to each Qualified Bidder not selected by the Debtors as either the Winning Bidder or the Back-Up Bidder within five (5) business days of the adjournment of the Auction.  The Deposit of the Back-Up Bidder, to the extent not designated as the Winning Bidder, shall be returned to the Back-Up Bidder within five (5) business days of the date of closing the Transaction with respect to the related Interests.

## BILL OF SALE AND ASSIGNMENT OF [MEMBERSHIP] [STOCK] INTEREST

THIS BILL OF SALE AND ASSIGNMENT OF [MEMBERSHIP[ [STOCK] INTEREST in _____, a _____ (the "Assignment Agreement") is made and entered into as of the ____ day of _____, 2009, by and between _____, a _____ ("Assignor"), and _____, a _____ ("Assignee").

### RECITALS:

WHEREAS, Assignor is [[a] [the sole] member of _____, a _____ limited liability company] [[a] [the sole] shareholder of the _____, [which owns all of the issued and outstanding stock of _____, a _____ ]] (the "Company");

WHEREAS, Assignor desires to sale and transfer to Assignee all of Assignor's right, title, and interest in and to the Company (the "Assigned Interest");

WHEREAS, Assignee desires to acquire the Assigned Interest;

NOW, THEREFORE, for and in consideration of the promises, warranties, and mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.     Sale and Assignment of Assigned Interest.   Assignor does hereby sell, assign, transfer, convey and deliver to the Assignee, and the Assignee hereby purchases from the Assignor, all of the Assignor's right, title and interest in and to the Assigned Interest, including, but not limited to, all right, title, and interest of Assignor in and to the properties (real and personal), capital, cash flow distributions, profits, and losses of the Company attributable to the Assigned Interest.

2.     Purchase Price.   Assignee hereby agrees to pay and will pay to Assignor the amount of _____ ($_____) in cash simultaneously upon the execution and delivery of this Assignment Agreement.

3.     Representations of Assignor.   Assignor warrants and represents to Assignee that (i) Assignor is the owner of the Assigned Interest, and (ii) Assignor has the power and authority to assign the Assigned Interest in accordance with this Assignment Agreement.

4.     AS-IS.  EXCEPT AS OTHERWISE PROVIDED HEREIN, ASSIGNEE ACKNOWLEDGES THAT THE ASSIGNED INTEREST IS BEING TRANSFERRED ON AN "AS IS" BASIS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, OF ANY KIND WHATSOEVER BY ASSIGNOR.

1

EXHIBIT
1

5.      <u>Assumption</u>.  Solely for the benefit of Assignor, Assignee hereby agrees to assume all liabilities and obligations of Assignor to the Company with respect to the Assigned Interest attributable to the period beginning as of the date of this Assignment Agreement.

6.      <u>Successors and Assigns</u>.  This Assignment Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors, and assigns.

7.      <u>Governing Law</u>.  This Assignment Agreement is being executed and delivered and is intended to be performed in the State of _____, and the substantive laws of such state shall govern the validity, construction, enforcement, and interpretation of this Assignment Agreement.

8.      <u>Counterparts</u>.  This Assignment Agreement may be executed in several counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument.

*(Signature Page Follows)*

2

IN WITNESS WHEREOF, this Assignment Agreement is executed as of the day and year first above written.

<u>ASSIGNOR</u>:

_____,
a _____

By: _____
Name:_____
Title:_____

<u>ASSIGNEE</u>:

_____,
a _____

By: _____
Name:_____
Title:_____

3

## EXHIBIT "C"

**Notice of Sale**

Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938

*Proposed Counsel for Opus West Corporation,*
*Opus West Construction Corporation, and*
*O.W. Commercial, Inc.*

Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 214-702-4061
Facsimile: 214-723-5345

*Proposed Counsel for Opus West LP and*
*Opus West Partners, Inc.*

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **OPUS WEST CORPORATION, *et al.*,**[1] | **Case No. 09-_____ (   )** |
| **Debtors.** | **Joint Administration Pending** |

## NOTICE OF (A) BIDDING PROCEDURES FOR DISPOSITION OF CERTAIN OF THE DEBTORS' INTERESTS, (B) AUCTION, (C) OBJECTION DEADLINE, AND (D) FINAL HEARING

**PLEASE TAKE NOTICE THAT,** on July ____, 2009, the United States Bankruptcy

Court for the Northern District of Texas (the "**Court**") entered an order (the "**Bidding**

**Procedures Order**") on the motion (the "**Motion**") filed as Docket No. ____ with the Court by

the above-captioned debtors and debtors-in-possession (the "**Debtors**") for an order (a)

approving the sale of certain assets of the Debtors (the "**Interests**") free and clear of all liens,

claims, encumbrances, restrictions, and other interests pursuant to Sections 105, 363(b), (f), and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Opus West Corporation (1533); Opus West Construction Corporation (5917); Opus West LP (5535); Opus West Partners, Inc. (5537); and O.W. Commercial, Inc. (9134).

(m) of Title 11 of the United States Code (the "**Bankruptcy Code**"), (b) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code, (c) approving bidding procedures, and (d) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to and as set forth in the Bidding Procedures Order, certain bidding procedures have been established with regard to the Auction (as defined below) and the disposition of the Interests.[2]

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures Order, an auction for the disposition of the Interests will take place on **August 26, 2009 at 10:00 a.m. (Prevailing Texas Time), at the offices of Greenberg Traurig, LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas, 75201, beginning at 10:00 a.m. (Prevailing Texas Time)** (the "**Auction**").

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures Order, **all objections to the Transaction shall be filed with the Bankruptcy Court and served on the Notice Parties on or before August 21, 2009 at 5:00 p.m. (Prevailing Texas Time).**

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures Order, a final hearing on the relief sought in the Motion, including the Transaction, will be held before the Court on **August 27, 2009, at        [   ]. m. (Prevailing Texas Time)**, at the Bankruptcy Court located at 1100 Commerce Street, 14th Floor, Dallas, Texas 75242 (the "**Hearing**").

---

[2] Terms not defined in this Notice shall have the same definitions as set forth in the Motion.

**NOTICE OF (A) BIDDING PROCEDURES FOR DISPOSITION
OF CERTAIN OF THE DEBTORS' INTERESTS, (B) AUCTION,
(C) OBJECTION DEADLINE, AND (D) FINAL HEARING - Page 2**
DAL 77,583,541v1

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Motion, the Bidding

Procedures Order, and the form of the Bill of Sale can be obtained upon request from counsel for

the Debtors as identified below.

**[REMAINDER INTENTIONALLY BLANK]**

Dated:  July __, 2009                    Respectfully Submitted,

                                         /s/
                                         _____
                                         Clifton R. Jessup, Jr.
                                         State Bar No. 10655020
                                         Bruce H. White
                                         State Bar No. 21288850
                                         Bryan L. Elwood
                                         State Bar No. 24029535
                                         GREENBERG TRAURIG, LLP
                                         2200 Ross Ave., Suite 5200
                                         Dallas, Texas 75201
                                         Telephone: 214-665-3600
                                         Facsimile: 214-665-5938
                                         E-mail:  jessupc@gtlaw.com
                                                  whiteb@gtlaw.com
                                                  elwoodb@gtlaw.com

                                         *Proposed Counsel for Opus West Corporation,*
                                         *Opus West Construction Corporation, and*
                                         *O.W. Commercial, Inc.*

                                         -and-

                                         /s/
                                         _____
                                         Peter Franklin
                                         State Bar No. 07378000
                                         Doug Skierski
                                         State Bar No. 24008046
                                         Erin K. Lovall
                                         State Bar No. 24032553
                                         FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
                                         10501 N. Central Expressway, Suite 106
                                         Dallas, Texas 75231
                                         Telephone: 214-702-4061
                                         Facsimile: 214-723-5345
                                         E-mail:  pfranklin@fslhlaw.com
                                                  dskierski@fslhlaw.com
                                                  elovall@fslhlaw.com

                                         *Proposed Counsel for Opus West LP and*
                                         *Opus West Partners, Inc.*

**NOTICE OF (A) BIDDING PROCEDURES FOR DISPOSITION
OF CERTAIN OF THE DEBTORS' INTERESTS, (B) AUCTION,
(C) OBJECTION DEADLINE, AND (D) FINAL HEARING - Page 4**
*DAL 77,583,541v1*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Notice of (A) Bidding Procedures for Disposition of Certain of the Debtors' Interests, and (B) Auction, (C) Objection Deadline, and (D) Final Hearing* was served on July ___, 2009, (1) upon those parties receiving notice pursuant to the Court's ECF notification system, and (2) by pre-paid, first-class United States mail on those listed on the attached Service List.

/s/ _____