Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938

*Proposed Counsel for Opus West Corporation,*
*Opus West Construction Corporation, and*
*O.W. Commercial, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **OPUS WEST CORPORATION, et al.,**[1] | **Case No. 09-_____ (   )** |
| **Debtors.** | **Joint Administration Pending** |

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF**

Opus West Corporation, a debtor and debtor-in-possession in the above-referenced case

(the "**Debtor**"), hereby moves the Court (the "**Motion**") for entry of an order (1) approving the

sale of certain of the Debtor's assets (the "**Purchased Assets**") free and clear of all liens, claims,

encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) of Title 11 of the

United States Code (the "**Bankruptcy Code**"), (2) approving bidding procedures and various bid

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Opus West Corporation (1533); Opus West Construction Corporation (5917); Opus West LP (5535); Opus West Partners, Inc. (5537); and O.W. Commercial, Inc. (9134).

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 1**
*DAL 77,580,046v3*

protections in advance of an auction, and (3) granting related relief. **Although this Motion is filed on the first day of the cases, the Debtor is only requesting at the first-day hearing that the Court set a hearing on or before July 14, 2009, to approve the Bidding Procedures and various bid protections and to set the Auction and other related dates. No substantive relief hereunder is being sought at the first-day hearing.** In support of this Motion, the Debtor respectfully states as follows:

## I.
## STATUS OF THE CASE AND JURISDICTION

1.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary Chapter 11 bankruptcy petition under the Bankruptcy Code.

2.      The Debtor has continued in possession of its properties and are operating and managing its businesses as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these cases.

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief sought herein are Sections 105, 363, and 365 of the Bankruptcy Code.

## II.
## BACKGROUND

**Operational Overview**

6.      Opus West Corporation ("**Opus West**"), with its affiliates, is a full-service real estate development firm that focuses on acquiring, constructing, operating, managing, leasing, and/or disposing of real estate development projects primarily located in the western United States. Although incorporated in Minnesota, Opus West and its affiliates are headquartered in Phoenix, Arizona, with additional offices in Austin, Houston, and Addison, Texas, as well as Irvine, Sacramento, and Pleasanton, California. With in-house expertise in office, industrial, retail, multifamily, government, and institutional projects, Opus West and its affiliates have developed more than 52.7 million square feet of space since Opus West started operations in 1979. Collectively, as of the Petition Date, the Debtors in this case employ approximately 37 people.

7.      Opus West and its affiliates are comprised of various joint ventures and wholly-owned subsidiaries that serve as holding companies, special purpose entities, construction companies, and project-level operating companies. These entities operate on an integrated basis with centralized management and administration in Phoenix. Opus West's debtor affiliates include: Opus West Construction Corporation ("**O.W. Construction**"), O.W. Commercial, Inc. ("**O.W. Commercial**"), Opus West LP ("**OWLP**"), and Opus West Partners, Inc. ("**O.W. Partners**"). O.W. Construction, O.W. Commercial, and O.W. Partners are wholly owned subsidiaries of Opus West. In turn, OWLP is owned by Opus West (1%) and O.W. Partners (99%). Opus West's interests are held 100% by its parent company, Opus Corporation.

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 3**
DAL 77,580,046v3

8.     O.W. Construction was formed in 1959 for the purpose of constructing Opus West and its affiliates' real estate development projects.

9.     O.W. Commercial was formed in 2005 as a special purpose entity for the purpose of holding commercial condominium projects developed by Opus West and its affiliates.

10.     OWLP was formed in 2002 as a limited partnership to develop real estate projects in the State of Texas.

11.     O.W. Partners was also formed in 2002 as a special purpose entity for the purpose of holding all of the limited partnership interests in which Opus West participates.

12.     The Debtors' assets include interests in approximately 50 commercial and residential real estate projects located across California, Arizona, and Texas. These projects include condominium, office, industrial, apartment, and retail projects in various stages of development.

**Financial Overview**

13.     As of May 31, 2009, Opus West and its debtor and non-debtor affiliates reported approximately $1,275,334,000 in total assets and approximately $1,462,328,000 in total liabilities. Opus West and its debtor and non-debtor affiliates had combined revenues in fiscal year 2008 of approximately $405,136,000.

14.     Pre-petition, Opus West guaranteed all of its subsidiaries' and joint ventures' loan agreements. In the aggregate, Opus West has guaranteed over $1,145,269,000 for various projects. Due to the present economic crisis and the unavailability of financing, almost all of these loans are currently in default.

15.     A more detailed factual background of the Debtors' businesses and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Affidavit of*

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 4**
DAL 77,580,046v3

*John Greer in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference.

## III.
## RELIEF REQUESTED

16.     By this Motion, the Debtor requests the entry of certain orders (a) approving, in accordance with the terms of the APA (as defined below), the sale of the Purchased Assets (as defined below) to the Purchaser (as defined below) free and clear of all liens, claims, encumbrances, and other interests pursuant Sections 105, 363(b), (f), and (m) of the Bankruptcy Code, (b) approving the Bidding Procedures and various bid protections in advance of the proposed Auction (all as defined below), and (c) granting related relief as the Court shall deem just and proper.  In addition, the Debtor requests that the Court's order approving the Bidding Procedures provide that the Purchaser shall be deemed a Qualified Bidder for all purposes thereunder.

17.     The following summarizes the terms of the proposed APA and the Bidding Procedures:

**A.      The Asset Purchase Agreement.**

18.     The Debtor anticipates that without continuing liquidity, the value of the Debtor's assets will rapidly diminish and will more than likely require the Debtor to liquidate its assets through Chapter 7.  Thus, the Debtor, using its business judgment to pursue a disposition of its assets, engaged in pre-petition certain marketing of the asset to ascertain the highest and best value of such assets.

19.     The Debtor engaged in extensive discussions with Arbeit Investment Limited Partnership, a Delaware limited partnership ("**Purchaser**"), regarding the possible sale of certain

OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF
CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING
BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF
AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 5
DAL 77,580,046v3

of the Debtor's assets to Purchaser. After consideration of all options, the Debtor has negotiated, prepared, and executed an *Asset Purchase Agreement* (the "**APA**")[2] for the sale of the Purchased Assets to Purchaser, as the stalking horse bidder and prospective purchaser of the Purchased Assets (the "**Transaction**"). A copy of the fully executed APA is attached hereto as Exhibit "A" and incorporated herein by reference.

20.    Simultaneously with the execution of the APA, the Purchaser agreed to lend $1,500,000 to the Debtor in exchange for a first-priority perfected security interest on the Purchased Assets. In addition, the Debtor and the Purchaser have agreed that as a part of the APA, that the Purchaser shall be entitled to credit bid its perfected security position and that the Purchase Price (as defined in the APA) shall be reduced by the amount of such credit.

21.    The Debtor located the Purchaser as the stalking horse bidder for the Purchased Assets. The Debtor understands that the competitive bidding process regarding the sale of the Purchased Assets must take place post-petition to satisfy the requirements of the Bankruptcy Code; however, the Debtor believes that such process must move quickly to ensure that the value of the Purchased Assets are maximized.

22.    The Debtor has negotiated with Purchaser to present this Motion on a consensual basis in order to ensure this process moves at the pace needed to achieve the highest value possible for creditors.

23.    The principal terms of the APA are summarized and highlighted as follows:[3]

---

[2] Capitalized terms used herein and not otherwise defined herein have the meaning ascribed thereto in the APA.

[3] To the extent of any inconsistency between the description of the APA herein and the terms of the APA itself, the APA shall control. The principal terms of the APA are highlighted in accordance with Bankruptcy Rule 6004.

| | |
|---|---|
| **Transaction:** | Acquisition by the Purchaser of certain of the Debtor's assets. *See* Section 2.1 of the APA. |
| **Purchased Assets and Related Consideration:** | The Purchaser will purchase those assets specifically identified in Section 2.1 of the APA, including for a cash payment of $1,700,000 ($1,500,000 as a credit bid of its secured debt) and the assumption of certain liabilities. *See* Sections 2.2 and 3.1 of the APA. |
| **Assumed Liabilities:** | Assumption of (1) all Liabilities, including continuing performance obligations, accruing from and after the Closing with respect to the Purchased Assets, and (2) any Transfer Taxes applicable to the transfer of the Purchased Assets pursuant to the APA. *See* Section 2.2 of the APA. |
| **Excluded Liabilities:** | Except for the Assumed Liabilities, Purchaser shall not assume or become liable for the payment or performance of any Liabilities of Debtor or otherwise related to the Purchased Assets of any nature whatsoever, known or unknown, fixed or contingent, accrued or incurred prior to the Closing Date. *See* Section 2.3 of the APA. |
| **Payment of Consideration:** | On the Closing Date, Purchaser shall pay to Debtor by wire transfer of immediately available funds into an account designated by Debtor, an amount equal to the Purchase Price as set forth in Section 3.1 of the APA. In addition, Purchaser shall assume the obligation to pay in the ordinary course of business after the Closing Date, the Assumed Liabilities and any other amounts set forth in Section 3.1 of the APA. *See* Section 3.2 of the APA. |
| **Credit for Outstanding Loan Balance:** | Purchaser agreed to provide a loan to Debtor pre-petition in the principal amount not to exceed One Million Five Hundred Thousand Dollars ($1,500,000) pursuant to the provisions of a Promissory Note dated as of the date of the APA. Purchaser shall be entitled to receive a credit of all or any portion of the outstanding principal of the loan plus unpaid interest accrued thereon toward the payment of the Purchase Price on the Closing Date and the amount of immediately available funds required to be provided pursuant to Section 3.2 of the APA shall be reduced by the amount of such credit. *See* Section 3.3 of the APA. |
| **Closing:** | No later than September 30, 2009. *See* Section 4.1 of the APA. |

The full terms and conditions of the proposed Transaction are set forth in the APA attached as Exhibit "A" hereto and reference should be made to the APA for additional terms. The Debtor believes that value will be maximized by closing the Transaction as soon as is practicable, and on the terms proposed in the APA.

## B. Bidding Procedures.

24. The Debtor proposes that the Court approve the following specific bidding procedures (the "**Bidding Procedures**") and certain bid protections, as further described below, for the Purchaser:

  a.   **Potential Bidder**. Parties interested in participating in the bidding process (each person other than the Purchaser, a "**Potential Bidder**") will be required to deliver to the Debtor (to the extent not already delivered) the following:

    i.   An executed confidentiality agreement in form and substance acceptable to the Debtor; and

    ii.   The most current financial information evidencing the Potential Bidder's ability to close the transaction that meets with the Debtor's satisfaction (the "Financial Information"), in consultation with any committee of unsecured creditors appointed in this case (a "**Committee**").

    As promptly as practicable after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to commence due diligence with respect to the Property as defined in the APA. The Debtor, in consultation with any Committee, reserves the right to refuse any Potential Bidder access to the due diligence materials if such access is deemed to be harmful to the Debtor's estates.

  b.   **Deadline for Submission of Bids**. The deadline for submitting any and all competing bids shall be on or before **August 21, 2009, at 5:00 p.m. (Prevailing Texas Time)** (the "**Bid Deadline**").

  c.   **Submission of Bids**. In order to qualify as a potential Qualified Bidder (as defined below) of the Purchased Assets, a Potential Bidder must timely submit a written bid (a "**Qualified Bid**") for the Purchased Assets that:

    i.   Contains an executed asset purchase agreement in substantially the

same form with all modifications, which shall be no less favorable than those proposed by the Purchaser in the APA (a "**Modified APA**").

ii.   The Modified APA shall be accompanied by a blacklined copy of the Modified APA showing all changes made to the APA.

iii.  The Modified APA shall not contain:

    1.   A request for any type of break-up fee, expense reimbursement, or similar type of payment; or

    2.   Any due diligence, financing contingencies, or other contingency of any kind.

iv.   Evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the APA or the Modified APA, as the case may be.

v.    Information regarding such Potential Bidder's financial capability to consummate the transactions contemplated by the APA or Modified APA, as the case may be, containing such financial and other information that will allow the Debtor, in consultation with any Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the APA or the Modified APA, as the case may be, including, without limitation:

    1.   The most current Financial Information of such Potential Bidder; or

    2.   If the Potential Bidder is an entity formed for the purpose of acquiring the Property then:

        A.   The Financial Information of the equity holder(s) of the Potential Bidder or such other form of financial disclosure acceptable to the Debtor; and

        B.   The written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of the Assets.

vi.   Discloses fully the identity of each entity that will be bidding for the Property or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation.

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 9**

DAL 77,580,046v3

vii. Discloses fully the terms of the proposed employment of any of Debtor's employees, management, or officers in connection with such bid.

viii. Is in an amount that exceeds the amount initially bid by the Purchaser in the APA (the "**Stalking Horse Bid**") by not less than $1,700,000 Purchase Price; plus a three percent (3%) breakup fee ($51,000) and an over bid amount of $50,000 for a total over bid of not less than $1,801,000.

ix. Is accompanied by a cash deposit in an amount equal to $180,000 (the "**Deposit**").

x. Is delivered to the following parties (except items under subsections (v) and (viii) above are only to be delivered to the Debtor and Debtor's counsel) such that they are received by the close of business on the Bid Deadline: (1) the Debtor's Chief Restructuring Officer, Attn: John Greer, 2555 East Camelback Road, Suite 800, Phoenix, AZ 85016; (2) the Debtor's counsel, Greenberg Traurig, LLP, Attn: Clifton R. Jessup, Jr., 2200 Ross Avenue, Suite 5200, Dallas, Texas, 75201; (3) counsel for any Committee; and (4) the Purchaser, Arbeit Investments Limited Partnership, 10350 Buen Road, West Minnetonka, MN 55343, Attn: Suzanne Flannigan (collectively, the "**Notice Parties**").

d. **Qualification of Bid**. After a Potential Bidder has delivered a bid, the Debtor, in consultation with any Committee, will determine whether such Potential Bidder is a "**Qualified Bidder**" and such bid is a "**Qualified Bid**." Promptly after making such determination, the Debtor will advise such bidder of this determination. The Debtor, in consultation with any Committee, reserve the right to reject any bid if such bid is on terms that are materially more burdensome or conditional than the terms of the APA.

e. **Auction**. In the event that one or more competitive Qualified Bids other than that of the Purchaser are received, the Debtor will conduct an auction to determine the highest or best bid for the Assets beginning at **10:00 a.m. (Prevailing Texas Time) on August 26, 2009, at the law offices of Greenberg Traurig, LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas, 75201** (the "Auction"). The Auction may be adjourned by announcement of the adjournment at the Auction to those parties who appear at the Auction. Each Qualified Bid other than the opening bid is referred to as a "**Subsequent Bid**." If the Debtor does not receive any Qualified Bids other than the Stalking Horse Bid in the APA received from Purchaser, the Debtor will report the same to the Court and will promptly proceed with the Transaction pursuant to the terms of the APA,

upon entry of an order approving the Transaction.

At the conclusion of the Auction, or as soon thereafter as practicable, the Debtor, in consultation with its financial advisors and any Committee appointed in this case, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the process, including those factors affecting the speed and certainty of consummating the Transaction; (ii) identify the highest or otherwise best offer(s) for the Assets received at the Auction (the "**Highest Bid**", and the bidder(s) making such bid, the "**Highest Bidder**"); and (iii) designate the Back-Up Bidder.

f.   **Auction Procedures**.  In the event an Auction is necessary, such Auction will be conducted as follows:

i.   Only the Debtor, the Purchaser, any representative of any Committee, and any Qualified Bidder who has timely submitted a Qualified Bid (and the legal and financial advisers to each of the foregoing) may attend the Auction, and only the Purchaser and the other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

ii.  At least one (1) business days prior to the Auction, each Qualified Bidder who has submitted timely a Qualified Bid must inform the Debtor whether it intends to participate in the Auction.  Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction.

iii. All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bids (including any Subsequent Bid by Purchaser) will, upon request, be fully disclosed to all other bidders throughout the entire Auction.

iv.  All Qualified Bidders or their representatives (including the Purchaser) shall agree to remain ready, willing, and able to close the Transaction under the terms of its last Qualified Bid (including the Stalking Horse Bid by Purchaser, if Purchaser is the designated Back-Up Bidder) submitted at or before such Auction as the sole back-up bidder (the "**Back-Up Bidder**" and such last bid, the "**Back-Up Bid**") until the earlier of (1) the close of the Transaction, or (2) September 2, 2009, and shall close if the Highest Bidder fails to close, if, as, and when determined by the Debtor to be the new Highest Bidder.

v.    The Debtor, in consultation with any Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order entered in connection herewith.

vi.    Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid. The bidding shall be in minimum increments of at least $50,000 higher than the previous bid or bids (after giving effect to the minimum required to exceed the Stalking Horse Bid for each bid to be determined to be a Qualified Bid). The Auction shall also continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), the Debtor must give effect to any Break-Up Fee that may be payable to the Purchaser under the APA such that the Purchaser's bid in an amount that is as much as $51,000 less than a competing bid in fact matches any such Qualified Bid.

vii.    Purchaser shall be entitled to cancel any outstanding amounts owed by Debtor due pursuant to the priority security financing extended to the Debtor by the Purchaser and use such cancellations as a credit or offset (the "**Credit Amount**") against the purchase price for the assets, including principal, interest, fees, and expenses, and also including using the Credit Amount as a portion of any "bid" submitted for the Property.

viii.    The credit bid rights of any secured party, including the Purchaser, shall be preserved in accordance with Section 363(k) of the Bankruptcy Code (provided that cash payment of the Bid Protections shall still apply).

g.    **Bid Protections**. In the event that the Debtor consummates any Alternative Transaction, including a sale of all or a substantial portion of the Purchased Assets by a competing bid from a party other than the Purchaser, or the confirmation of any Chapter 11 Plan, within 180 days of the execution of the APA, the Purchaser shall be entitled to a fee of three percent (3%) of the Purchase Price ($51,000) (the "**Break-Up Fee**"), to be paid from the proceeds of the closing of such transaction. The Break-Up Fee shall be payable to the Purchaser as a super-priority administrative

OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 12

DAL 77,580,046v3

expense claim under Section 507(b) of the Bankruptcy Code. In no event shall the Purchaser be entitled to the Break-Up Fee if the APA is terminated under Section 4.4(b).

h. **Final Hearing**. The Court has scheduled a hearing to approve the Transaction (the "**Final Hearing**") on **August 27, 2009, at ___ : ___ .m. (Prevailing Texas Time)**. All objections to the Transaction shall be filed with the Bankruptcy Court and served on the Notice Parties at least three (3) days prior to the Final Hearing. The Highest Bidder and the Back-Up Bidder must produce a competent witness at the Final Hearing (and any subsequent hearing) to provide testimony, if necessary, to establish adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder, to the extent required by Sections 365(b) of the Bankruptcy Code. At the Final Hearing, the Debtor will request that the Court approve the Transaction with regard to the Back-Up Bidder in the event the contemplated Transaction with the Highest Bidder does not timely close; in which case such Back-Up Bidder shall become the Highest Bidder without further order of the Court. The Highest Bidder (if other than the Purchaser) shall be substituted for the Purchaser under the APA (as amended to reflect terms of the Highest Bidder's bid) and the proposed Order.

i. **Closing.** Closing shall take place on August 31, 2009, and shall be only upon such order becoming a final order, except upon the waiver of this prerequisite (of a final order) by the Highest Bidder.

j. **Return of Deposits**. The Deposits of all Qualified Bidders (except for the Highest Bidder) shall be held in non-interest-bearing escrow account. Notwithstanding the foregoing, the Deposit, if any, submitted by the Highest Bidder, shall be applied against the payment of the Purchase Price upon closing of the Transaction with the Highest Bidder. Except as otherwise provided in the APA and herein, all Deposits shall be returned to each Qualified Bidder not selected by the Debtor as either the Highest Bidder or the Back-Up Bidder within five (5) business days of the adjournment of the Auction. The Deposit of the Back-Up Bidder, to the extent not designated as the Highest Bidder, shall be returned to the Back-Up Bidder within five (5) business days of the date of closing the Transaction.

25. To ensure that all parties-in-interest receive adequate notice of the Transaction, not later than two (2) days after the entry of an order approving the portion of this Motion relating to the Bidding Procedures, the Debtor will serve a copy of any order of the Court

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 13**

DAL 77,580,046v3

approving the Bidding Procedures, various bid protections, and scheduling the Auction and the Final Hearing (the "**Procedures Order**"), substantially in the form attached to this Motion as Exhibit "B," via first-class United States mail, postage prepaid to (a) the Office of the United States Trustee for the Northern District of Texas, (b) all entities known to have expressed a *bona fide* interest in acquiring the Purchased Assets within the last six months, (c) federal, state, and local regulatory authorities (including taxing authorities) with jurisdiction over the Debtor, and (d) all other known parties-in-interest in these bankruptcy cases (including any party who has entered an appearance and request for service of papers). The Debtor submits that all parties-in-interest will have adequate notice of the Auction and Transaction.

**D.     Summary of Timeline.**

26.     The Debtor has formulated the following timeline to effectuate the Transaction contemplated herein, and seek hearings and deadlines to be set as follows:

| Case Day | Activity/Deadline |
|---|---|
| On or before July 14, 2009 | • Hearing on bidding procedures<br>• Objections due two (2) days prior to hearing |
| August 21, 2009 | • Qualified bid deadline |
| August 26, 2009 | • Auction |
| August 21, 2009 | • Last day to object to Transaction |
| On or before August 27, 2009 | • Final hearing |
| On or before August 31, 2009 | • Projected closing of Transaction |

**IV.**
**BASIS FOR RELIEF REQUESTED**

27.     The Debtor has determined that a disposition of the Debtor's assets is necessary to maximize available value. The Debtor has also determined that a reorganization is not a viable option due to the Debtor's lack of liquidity to appropriately fund continuation of its businesses.

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 14**
*DAL 77,580,046v3*

Through the extensive marketing efforts, the Debtor has located a purchaser for the Debtor's Purchased Assets, representing the highest and best value for such Purchased Assets. The Debtor asserts that the Transaction is in the best interests of its estates and its creditors and hereby requests that the Court the approve the relief requested herein and enter a final sale order substantially in the form attached hereto as Exhibit "C".

## A. Disposition of the Purchased Assets is Authorized Under Section 363(b) of the Bankruptcy Code.

28.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29.     Disposition of the Purchased Assets should be authorized pursuant to Section 363(b) of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (N.D. Ga. 1985) ("[A] debtor seeking approval for [a sale under section 363(b)] bears the burden of articulating a sound business justification..."); *In re Tom's Foods, Inc.,* 2005 WL 3022022 at *2 (Bankr. M.D. Ga. 2005) ("It is now generally accepted that section 363 allows such sales in chapter 11, provided, however that the sale proponent demonstrates a good, sound business justification for conducting the sale..."); *In re*

*Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the assets; and whether the asset is decreasing or increasing in value.

124 B.R. at 176. The court in *In re Tom's Foods* further held that, in addition to demonstrating a sound business justification, the sale proponent must also show "that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable." 2005 WL 3022022 at *2.

30. The Debtor has proposed to sell the Purchased Assets after thorough consideration of all viable alternatives, and have concluded that such disposition is supported by a number of sound business reasons. The Debtor has determined that a reorganization rather than the sale and lease of its Purchased Assets is not a viable option due to the Debtor's insufficient liquidity to continue operating the businesses. Hence, the Debtor has determined that a disposition of its Purchased Assets herein provides the best and most efficient means for the Debtor to maximize the value of its estates and avoid further deterioration in value.

31. As explained above, the Debtor has extensively considered marketing the Debtor's Purchased Assets and propose to conduct the Auction process related to the Purchased

Assets in accordance with this Motion, which proposes to implement procedures designed to maximize the value that will be realized from the disposition of the Purchased Assets.

32.     As a result of the Debtor's efforts to date, the Debtor believes that the Purchaser's offer is reasonable, will constitute fair and reasonable consideration for the Purchased Assets, and will maximize value. In the event that during the competitive bidding process, as set forth in the APA and in the proposed order hereon, a Qualified Bidder offers a Qualified Bid that is deemed higher and/or better, such Highest Bidder shall become the Purchaser under the APA, or Modified APA (if applicable), and shall be required to close and comply therewith.

33.     Based on the foregoing, the disposition of the Purchased Assets is justified by sound business reasons and is in the best interests of the Debtor and its estates. Accordingly, pursuant to Section 363(b) of the Bankruptcy Code, the Debtor requests approval of the sale and lease of the Purchased Assets to the Highest Bidder as set forth herein.

**B.      Sale of the Purchased Assets Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code.**

34.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

> (2)     such entity consents;

> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4)     such interest is in a bona fide dispute; or

> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35.     As quoted above, Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in Section 363(f), is not defined in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." *Id.*, at 258. The court observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).

36.     As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of Section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the Debtor "could sell its assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

37.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all interests, except with respect to any interests that are Assumed Liabilities under the APA. *See In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f) are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

38.     The Debtor submits that each interest that is not an Assumed Liability satisfies at

least one of the five conditions in Section 363(f) of the Bankruptcy Code. The Debtor accordingly requests authority to convey the Purchased Assets to the Purchaser, free and clear of all interests (except as otherwise provided in the APA).

39. The Debtor has conducted a UCC search to determine possible lienholders of the Debtor's Purchased Assets in conjunction with the proposed sale of the Purchased Assets.[4] The Debtor has served such purported lienholders notice of this Motion, and will serve such parties with notice of any order approving the relief requested by this Motion.

40. Accordingly, this Court should approve the sale of the Purchased Assets to the Highest Bidder, free and clear of interests under Section 363(f) of the Bankruptcy Code.

**C. The Bidding Procedures Provided Herein Are Consistent and Appropriate in the Context of Bankruptcy Transactions.**

41. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., In re Friedman's, Inc.*, 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R, 650, 656-57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 (same); *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).

42. In that regard, courts uniformly recognize that procedures intended to enhance

---

[4] Nothing herein shall be deemed an admission of validity, extent, priority, or perfection.

competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re Montgomery Ward Holding Corp.,* Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Fruehauf Trailer Corp.,* Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources,* 147 B.R. at 659; *In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("Competitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize the bidding, not to restrict it'").

43.     The Bidding Procedures proposed herein will provide a framework for the Debtor to entertain Qualified Bids for the Purchased Assets and, if they receive such Qualified Bids, to conduct the Auction in a fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. This should increase the likelihood that the Debtor will receive the greatest possible consideration for the Purchased Assets. The Bidding Procedures also set forth a schedule for achieving these objectives in an expeditious manner, balancing the Debtor's desire to maximize recovery for the benefit of the estates, with the need to move quickly to avoid any further deterioration in value.

**D.     The Purchaser is a Good Faith Purchaser and is Entitled to the
         Full Protections of Section 363(m) of the Bankruptcy Code.**

44.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

45. While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies*, has stated:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). *See also In re Miami General Hospital, Inc.*, 81 B.R. 682, 688 (S.D. Fla. 1988) ("The misconduct at a judicial sale that would destroy a buyer's good faith 'involved fraud, collusion between the purchasers and other bidders or the trustee, or an attempt to take generally unfair advantage of other bidders.'") (*quoting Abbotts Dairies*, 788 F.2d at 147).

46. Moreover, the Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

47. The Debtor intends to make an appropriate showing at the Final Hearing that the APA with the Purchaser is the result of a negotiated, arms'-length transaction, in which such Purchaser at all times acted in good faith. The Debtor thus requests that the Court find that the Purchaser will be purchasing the Purchased Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 21**
DAL 77,580,046v3

48.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee; (b) the Debtor's pre-petition secured lenders; (c) the consolidated forty (40) largest unsecured creditors as set forth in the list filed with the Debtor's petition; (d) the Office of the United States Attorney General for the Northern District of Texas; (e) Arbeit Investment Limited Partnership; and (f) the Internal Revenue Service.  Upon advice of counsel, the Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and granting the Debtor such other and further relief as is just and proper.

Dated:  July 6, 2009

Respectfully Submitted,

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938
E-mail:  jessupc@gtlaw.com
            whiteb@gtlaw.com
            elwoodb@gtlaw.com

*Proposed Counsel for Opus West Corporation,
Opus West Construction Corporation, and
O.W. Commercial, Inc.*

**OPUS WEST CORPORATION'S MOTION FOR ORDERS (1) APPROVING SALE OF
CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS OF THE DEBTOR, (2) APPROVING
BIDDING PROCEDURES AND VARIOUS BID PROTECTIONS IN ADVANCE OF
AN AUCTION, AND (3) GRANTING RELATED RELIEF - Page 22**
DAL 77,580,046v3