## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of this ___ day of August, 2009, by and between RAINMARK, INC., a Texas corporation or its assigns ("Purchaser"), and OPUS WEST LP, a Delaware limited partnership ("Seller").

### RECITALS:

A.   Seller is the owner of certain real property located in Tarrant County, Texas, as further described on Exhibit A attached hereto (the "Land").

B.   Seller has agreed to sell to Purchaser, and Purchaser has agreed to purchase from Seller, all Sellers right, title and interest in the Land, together with all of Seller's right, title, interests, privileges, licenses and easements and other rights and appurtenances pertaining solely and exclusively to the Land, including, but not limited to, all buildings, fixtures and other improvements located on the Land, if any (collectively, the "Asset").

C.   Seller is one of the debtors in a Chapter 11 bankruptcy proceeding identified as Case No. 09-34356-hdh-11 and referred to as In re: Opus West Corporation (the "Bankruptcy Proceeding").

D.   This Agreement is being executed pursuant to that certain Order (1) approving bidding procedures and bid protections in advance of auction, (2) approving form and manner of notice of auction and final hearing, and (3) granting related relief entered on July 27, 2009 (the "Bidding Procedures Order") by the United States Bankruptcy Court, Northern District of Texas, Dallas Division (the "Bankruptcy Court") and is made subject to the terms and conditions of the Bidding Procedures Order.

E.   Capitalized terms used herein and not otherwise defined shall have the meanings respectively ascribed to such terms in the Bidding Procedures Order.

### AGREEMENT:

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do agree as follows:

### ARTICLE 1
### PURCHASE AND SALE OF ASSETS

**1.1   Commitment to Sell and Assign.** Upon the terms and subject to the conditions set forth in this Agreement, Seller shall sell, transfer, assign, convey and deliver to Purchaser, the Asset, as such existed as of the date hereof.

**1.2   Deposit; Consideration.** Seller acknowledges receipt of the sum of $6,000.00 (the "Deposit") posted by Purchaser as an earnest money deposit as required by

EXHIBIT A

Section 5(h) of the Bidding Procedures (as defined in the Bidding Procedures Order). The Deposit will be held and disbursed by Seller pursuant to the requirements of the Bidding Procedures. Purchaser shall deliver as consideration for the purchase and sale of the Asset at the Closing (as hereinafter defined) payment to Seller of SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00) (the "Purchase Price").

**1.3** **Bankruptcy Court Approval**. The sale of the Property from Seller to Purchaser is subject to approval by the Bankruptcy Court pursuant to the Bidding Procedures Order and an order authorizing Seller to consummate the sale of the Property pursuant to this Agreement (the "Sale Order"). Notwithstanding anything in this Agreement to the contrary, in the event of a conflict between the terms and conditions of this Agreement and the Sale Order, the Sale Order shall control in all respects.

**1.4** **Closing**. The purchase and sale of the Asset shall be consummated at a closing (the "Closing") to occur on September 2, 2009 (the "Closing Date"). At the Closing, the following items shall be exchanged: (a) Purchaser shall deliver to Seller the Purchase Price in cash or immediately available good funds, less the amount of the Deposit currently held by Seller, and (b) Seller shall deliver to Purchaser (i) possession or constructive possession of the Asset; and (ii) such other agreements, documents and/or instruments, including such specific assignments, bills of sale and other instruments of conveyance and transfer, in form and substance acceptable to Purchaser and Seller, as may be necessary to transfer, convey and deliver the Asset from Seller to Purchaser and to vest in Purchaser title thereto.

**1.5** **Closing Costs**. Purchaser shall pay all recording costs, any escrow fee(s) charged by a title company (if any), all costs for any title insurance, surveys, reports and other due diligence which Purchaser may elect to obtain, costs for any tax certificates, and costs associated with any loan obtained by Purchaser to finance the acquisition of the Asset. Each party shall be responsible for the payment of its own attorneys' fees incurred in connection with this Agreement and all other expenses which each party may incur. Additionally, any expenses, charges and fees of Closing not specifically allocated herein or incurred by a specific party shall be borne by the Purchaser, other than expenses, charges, and fees incurred by the Seller or Seller's agents, representatives, and attorneys.

**1.6** **Prorations**. No prorations shall be made at Closing for real estate taxes and other costs and expenses associated with the Property.

**1.7 Default; Remedies.** If Purchaser breaches any of its covenants, representations, warranties, obligations, liabilities or duties hereunder to be performed by Purchaser at or prior to Closing, then (i) ownership of the Deposit shall be immediately vested in Seller, and (ii) Seller shall be entitled to enforce specific performance of Purchaser's obligations under this Agreement, and (iii) Seller shall be entitled to recover any and all damages, costs and expenses, including reasonable attorneys' fees and expenses suffered or resulting from Purchaser's breach. If Seller breaches any of its covenants, representations, warranties, obligations, liabilities or duties hereunder to be performed by Seller at or prior to Closing, Purchaser shall be entitled to enforce specific performance of Seller's obligations under this Agreement and to pursue such other rights and remedies, if any, as may be consistent with the Bidding Procedures Order or approved by the Bankruptcy Court.

## ARTICLE 2
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF PURCHASER

Purchaser represents and warrants to Seller that the statements contained in this Section 2 are correct and complete as of the date of this Agreement.

**2.1 Organization of Purchaser.** Purchaser is a corporation duly organized, validly existing, and in good standing under the laws of the jurisdiction of the State of Texas.

**2.2 Authorization of Transaction.** Purchaser has the legal right and capacity to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement has been duly executed and delivered, and constitutes or upon execution and delivery will constitute the valid and legally binding obligations, of Purchaser, enforceable in accordance with its terms, except as enforcement may be limited by general principles of equity whether applied in a court of law or a court of equity and by bankruptcy, insolvency and similar laws affecting creditors' rights and remedies generally. No authorization, consent, approval, permit or license of, or filing with, any governmental or public body or authority, or any other person or entity is required to authorize, or is required in connection with, the execution, delivery and performance of this Agreement on the part of Purchaser.

## ARTICLE 3
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Seller represents and warrants to Purchaser that the statements contained in this Section 3 are correct and complete as of the date of this Agreement.

**3.1 Organization and Good Standing.** Seller is a limited partnership duly organized and validly existing, with all requisite power and authority to own the Asset.

**3.2 Authorization of Transaction.** Seller has the legal right and capacity to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement has been duly executed and delivered, and constitutes or upon execution and delivery will constitute the valid and legally binding obligations, of Seller, enforceable in accordance with its

3

terms, except as enforcement may be limited by general principles of equity whether applied in a court of law or a court of equity and by bankruptcy, insolvency and similar laws affecting creditors' rights and remedies generally. No authorization, consent, approval, permit or license of, or filing with, any governmental or public body or authority, or any other person or entity is required to authorize, or is required in connection with, the execution, delivery and performance of this Agreement on the part of Seller.

**3.3** **Title to Asset**. Seller is the true and lawful owner of the Asset. Seller has all necessary power and authority to sell the Asset to Purchaser. Upon delivery by Purchaser to Seller of the Purchase Price to be delivered at Closing, Seller will transfer good title to the Asset, subject to the terms of this Agreement.

## ARTICLE 4
## NATURE OF SALE

**4.1** **AS-IS**. Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller to Purchaser in Article 3 hereof, and Purchaser acknowledges and agrees that, except for the representations and warranties contained herein, the Asset are being transferred to Purchaser on a "WHERE IS" and, as to condition, "AS IS" basis. Purchaser acknowledges that:

(i) Purchaser will assume and agree to pay all real and personal property taxes, if any for 2009 and subsequent years; and

(ii) Title to the Asset will be conveyed by Seller to Purchaser subject to all matters of record except mechanic's and materialmen's liens and claims of liens, judgment liens, abstracts of judgment, and deeds of trust, mortgages or similar liens and security interests in favor of any lender, all as specified in the Sale Order.

Purchaser further acknowledges that it has conducted or, as of the Closing Date, will have conducted, to its satisfaction, its own independent investigation of the Asset and, in making the determination to proceed with the transactions contemplated by this Agreement, Purchaser has, or will have, relied on the results of its own independent investigation. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, PURCHASER ACKNOWLEDGES THAT SELLER HAS NOT MADE ANY REPRESENTATION RELATING TO THE PROPERTY REGARDING SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, COMPLIANCE WITH ZONING LAWS, ENVIRONMENTAL LAWS, OR ANY OTHER FEDERAL, STATE OR LOCAL STATUTES, CODES, REGULATIONS OR ORDINANCES RELATING TO THE USE THEREOF. PURCHASER ALSO ACKNOWLEDGES AND AGREES THAT THE INSPECTION AND INVESTIGATION OF THE ASSETS BY PURCHASER HAS BEEN ADEQUATE TO ENABLE PURCHASER TO MAKE ITS OWN DETERMINATION WITH RESPECT TO THE SUITABILITY OR FITNESS OF THE PROPERTY, INCLUDING WITH RESPECT TO SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, ZONING LAWS, ENVIRONMENTAL LAWS, AND ANY OTHER

FEDERAL, STATE OR LOCAL STATUTES, CODES REGULATIONS OR ORDINANCES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, THE ASSETS ARE BEING SOLD BY SELLER, AND PURCHASER AGREES TO ACCEPT THE PURCHASED ASSETS, IN "AS-IS" AND "WHERE-IS" CONDITION ON THE CLOSING DATE. PURCHASER ACKNOWLEDGES, REPRESENTS AND WARRANTS THAT (I) PURCHASER HAS HAD AN OPPORTUNITY TO MAKE AN INDEPENDENT INVESTIGATION AND EXAMINATION OF THE ASSETS (AND ALL MATTERS RELATED THERETO), AND TO BECOME FULLY FAMILIAR WITH THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, AND (II) SELLER AND ITS EMPLOYEES, AGENTS, MEMBERS, DIRECTORS, AND OFFICERS HAVE NOT MADE AND SHALL NOT MAKE ANY VERBAL OR WRITTEN REPRESENTATIONS, WARRANTIES OR STATEMENTS OF ANY NATURE OR KIND WHATSOEVER TO PURCHASER, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE ABOVE, AND, IN PARTICULAR, EXCEPT AS EXPRESSLY SET FORTH HEREIN, NO REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE OR SHALL BE MADE WITH RESPECT TO (A) THE PHYSICAL CONDITION OR OPERATION OF THE ASSETS, INCLUDING THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS OR CONDITIONS THEREON (INCLUDING THE PRESENCE OF ASBESTOS OR ASBESTOS CONTAINING MATERIALS OR THE RELEASE OR THREATENED RELEASE OF HAZARDOUS SUBSTANCES), (B) THE REVENUES OR EXPENSES OF THE PROPERTY, (C) THE ZONING AND OTHER LEGAL REQUIREMENTS APPLICABLE TO THE PROPERTY OR THE COMPLIANCE OF THE PROPERTY THEREWITH, (D) THE NATURE AND EXTENT OF ANY MATTER AFFECTING TITLE TO THE PROPERTY, (E) THE QUANTITY, QUALITY, OR CONDITION OF THE ASSETS, OR (F) ANY OTHER MATTER OR THING AFFECTING OR RELATING TO THE PROPERTY, OR ANY PORTION THEREOF, THE INTERESTS THEREIN TO BE CONVEYED TO PURCHASER PURSUANT TO THE TERMS OF THE TRANSACTIONS CONTEMPLATED HEREBY. PURCHASER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PORTION OF THIS AGREEMENT.

## ARTICLE 5
## MISCELLANEOUS

**5.1    Entire Agreement.**  This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby, and supersedes all prior agreements, arrangements, and understandings relating to the subject matter hereof.

**5.2    Notices.**  All notices, payments and other required communications ("<u>Notices</u>") to the parties shall be in writing, and shall be addressed, respectively, as follows:

       If to Seller:       Greenburg Traurig, LLP
                                         2200 Ross Avenue, Suite 5200

|                  |                                                                                                              |
|------------------|--------------------------------------------------------------------------------------------------------------|
|                  | Dallas, Texas 75201<br>Attention: Clifton R. Jessup, Jr.                                                      |
| If to Purchaser: | Rainmark, Inc.<br>3131 McKinney Avenue<br>Suite 400<br>Dallas, Texas 75204<br>Attention: Artemio de la Vega   |
| With a copy to:  | Mark E. Andrews<br>Cox Smith Matthews Incorporated<br>1201 Elm Street, Suite 3300<br>Dallas, Texas 75270      |

All Notices shall be given (i) by personal delivery, or (ii) by electronic communication, with a confirmation sent by registered or certified mail, return receipt requested, or (iii) by registered or certified mail, return receipt requested. All Notices shall be deemed delivered (i) if by personal delivery, on the date of delivery if delivered during normal business hours, and, if not delivered during normal business hours, on the next business day following delivery, (ii) if by electronic communication, on the date of receipt of the electronic communication, and (iii) if solely by mail, on the date of receipt. A party may change its address by Notice to the other party in accordance with this Section 5.2.

    **5.3** **Applicable Law**. All questions concerning the construction, validity and interpretation of this Agreement shall be governed by the internal laws, and not the law of conflicts, of the State of Texas.

    **5.4** **Attorneys' Fees**. If any legal action is brought by any party hereto, the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorneys' fees in addition to any other relief that may be awarded. For the purposes of this Section, the "prevailing party" shall be the party in whose favor final judgment is entered. If declaratory or injunctive relief alone is granted, the Bankruptcy Court may determine which, if either, of the parties is the prevailing party. The amount of reasonable attorneys' fees shall be determined by the Bankruptcy Court.

    **5.5** **Waiver**. The failure of a party to insist on the strict performance of any provision of this Agreement or to exercise any right, power or remedy upon a breach hereof shall not constitute a waiver of any provision of this Agreement or limit the party's right thereafter to enforce any provision or exercise any right.

    **5.6** **Severability**. If any term, provision, covenant, or restriction of this Agreement is held by the final, nonappealable order of a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**5.7    Amendments**. This Agreement may be amended, modified, or superseded only by written instrument executed by all parties hereto.

**5.8    Headings**. The Article and Section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent or for any purpose, to limit or define the text of any Article or Section.

**5.9    Gender and Number**. Whenever required by the context, as used in this Agreement, the singular number shall include the plural and the neuter shall include the masculine or feminine gender, and vice versa.

**5.10    Counterparts**. This Agreement may be executed in several counterparts, each of which shall be an original and all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties have not signed the same counterpart.

**5.11    Time is of Essence**. TIME IS OF THE ESSENCE under this Agreement and each and every provision hereof and all of the other documents, instruments and certificates executed in connection herewith.

*[Remainder of page intentionally left blank; signature page follows]*

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first above written.

**Seller:**

OPUS WEST LP, a Delaware limited partnership

By:   Opus West Corporation, a Minnesota corporation

    By:   Phoenix Capital Partners LLC, its Chief Restructuring Officer

        By:_____
        Name:   John Greer
        Title:   Member

**Purchaser:**

RAINMARK, INC.

By: *[signature]*
Name: ARTEMIO DE LA VEGA
Title: PRES.

## EXHIBIT A

## LEGAL DESCRIPTION

Lot 7R1, Block 1, Eastchase Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat thereof recorded in Cabinet A, Slide 2331, Plat Records, Tarrant County, Texas.