## EXHIBIT "A"

## LAND

All that parcel or parcels of real property located in the Denton County, State of Texas, and more particularly described as follows:

TRACT I: FEE ESTATE

All of Lots 6 and 8, Block 1 and Lots 7 and 8, Block 2, Marketplace at Highland Village, an addition to the City of Highland Village, Denton County, Texas, according to the plat thereof recorded in Cabinet W, Page 594, Plat Records, Denton County, Texas: SAVE AND EXCEPT that portion of Lots 7 and 8, Block 2 conveyed to the City of Highland Village in Right of Way Dedication recorded under Clerk's File No. 2007-99397, Real Property Records, Denton County, Texas.

TRACT II: EASEMENT ESTATE

Those non-exclusive easement rights created in Easements with Covenants and Restrictions Affecting Land, executed by and between Wal-Mart Stores Texas, LP, a Texas limited partnership and Opus West LP, a Delaware limited partnership, dated January 25, 2006, filed for record on January 26, 2006 and recorded in under Document No. 2006-9768, Real Property Records, Denton County, Texas.

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of this 21st day of August, 2009, by and between BANK OF AMERICA, N.A., a national banking association ("Purchaser"), and OPUS WEST LP, a Delaware limited partnership ("Seller").

### RECITALS:

A. Seller is the owner of certain 7 acres of real property known as Highland Village Land (Outparcels) and located in Denton County, Highland Village, Texas, as further described on Exhibit A to the Joint Motion of the Debtors for Orders: (I) Authorizing the Sale of Certain Property in Certain Entities Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Establishing Bidding Procedures and Scheduling an Expedited Hearing Relating to the Approval Thereof; (III) Approving the Form of Notice Related to the Auction and Sale Hearing; and (IV) Scheduling a Sale Approval Hearing Immediately After the Auction, Docket No. 9 (the "Property"), a description of which is attached hereto as Exhibit "A." Purchaser asserts a lien against, and seeks to acquire, the Assets (as defined herein).

B. Seller has agreed to sell to Purchaser, and Purchaser has agreed to purchase from Seller, all Sellers right, title and interest in the Property (the "Assets"), on the terms and conditions set forth herein. Purchaser is not requesting the assumption and assignment of any executory contracts or unexpired leases relating to the Property.

### AGREEMENT:

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do agree as follows:

### ARTICLE 1
### PURCHASE AND SALE OF ASSETS

1.1 **Commitment to Sell and Assign**. Upon the terms and subject to the conditions set forth in this Agreement, Seller shall sell, transfer, assign, convey and deliver to Purchaser, the Assets, as such existed as of the date hereof.

1.2 **Consideration**. Purchaser shall deliver as consideration for the purchase and sale of the Assets at the Closing (as hereinafter defined) payment to Seller of a credit bid[1] of $3,068,500.00 (the "Purchase Price"). BOA's full claim, which represents the largest amount that BOA may bid on the Assets, is $15,515,775.00; comprised of (i) $15,295,746.29 in principal; (ii) $177,366.36 of interest through July 5, 2009; (iii) $20,000.00 in appraisal fees; and (iv) $22,663.00 in trustee fees.

1.3 **Closing**. The purchase and sale of the Assets shall be consummated at a closing (the "Closing") to occur on or before September 2, 2009 (the "Closing Date"). At

---

[1] Purchaser is the holder of a $15,515,775.00 valid, secured, perfected, and non-avoidable claim against Seller, its estate, and the Property.

EXHIBIT "B"

the Closing, the following items shall be exchanged: (a) Purchaser shall deliver to Seller the Purchase Price in credit bid form and (b) Seller shall deliver to Purchaser (i) possession or constructive possession of the Assets; and (ii) such other agreements, documents and/or instruments, including such specific assignments, bills of sale and other instruments of conveyance and transfer, in form and substance acceptable to Purchaser and Seller, as may be necessary to transfer, convey and deliver the Assets from Seller to Purchaser and to vest in Purchaser title thereto.

## ARTICLE 2
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF PURCHASER

Purchaser represents and warrants to Seller that the statements contained in this Section 2 are correct and complete as of the date of this Agreement.

2.1 **Organization of Purchaser.** Purchaser is a national banking association.

2.2 **Authorization of Transaction.** Purchaser has the legal right and capacity to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement has been duly executed and delivered, and constitutes or upon execution and delivery will constitute the valid and legally binding obligations, of Purchaser, enforceable in accordance with its terms, except as enforcement may be limited by general principles of equity whether applied in a court of law or a court of equity and by bankruptcy, insolvency and similar laws affecting creditors' rights and remedies generally. No authorization, consent, approval, permit or license of, or filing with, any governmental, or public body or authority, or any other person or entity is required to authorize, or is required in connection with, the execution, delivery and performance of this Agreement on the part of Purchaser.

## ARTICLE 3
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Seller represents and warrants to Purchaser that the statements contained in this Section 3 are correct and complete as of the date of this Agreement.

3.1 **Organization and Good Standing.** Seller is a Delaware limited partnership duly organized and validly existing, with all requisite power and authority to own the Assets.

3.2 **Authorization of Transaction.** Seller has the legal right and capacity to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement has been duly executed and delivered, and constitutes or upon execution and delivery will constitute the valid and legally binding obligations, of Seller, enforceable in accordance with its terms, except as enforcement may be limited by general principles of equity whether applied in a court of law or a court of equity and by bankruptcy, insolvency and similar laws affecting creditors' rights and remedies generally. No authorization, consent, approval, permit or

2

license of, or filing with, any governmental or public body or authority, or any other person or entity is required to authorize, or is required in connection with, the execution, delivery and performance of this Agreement on the part of Seller.

3.3   **Title to Assets**. Seller is the true and lawful owner of the Assets. Seller has all necessary power and authority to sell the Assets to Purchaser. Upon delivery to Purchaser of the Purchase Price to be delivered at Closing, Seller will transfer good title to the Assets.

3.4   **AS-IS**. Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller to Purchaser in Article 3 hereof, and Purchaser acknowledges and agrees that, except for the representations and warranties contained herein, the Assets are being transferred to Purchaser on a "WHERE IS" and, as to condition, "AS IS" basis. Purchaser acknowledges that it has conducted or, as of the Closing Date, will have conducted, to its satisfaction, its own independent investigation of the Assets and, in making the determination to proceed with the transactions contemplated by this Agreement, Purchaser has, or will have, relied on the results of its own independent investigation. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, PURCHASER ACKNOWLEDGES THAT SELLER HAS NOT MADE ANY REPRESENTATION RELATING TO THE PROPERTY REGARDING SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, COMPLIANCE WITH ZONING LAWS, ENVIRONMENTAL LAWS, OR ANY OTHER FEDERAL, STATE OR LOCAL STATUTES, CODES, REGULATIONS OR ORDINANCES RELATING TO THE USE THEREOF. PURCHASER ALSO ACKNOWLEDGES AND AGREES THAT THE INSPECTION AND INVESTIGATION OF THE ASSETS BY PURCHASER HAS BEEN ADEQUATE TO ENABLE PURCHASER TO MAKE ITS OWN DETERMINATION WITH RESPECT TO THE SUITABILITY OR FITNESS OF THE PROPERTY, INCLUDING WITH RESPECT TO SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, ZONING LAWS, ENVIRONMENTAL LAWS, AND ANY OTHER FEDERAL, STATE OR LOCAL STATUTES, CODES REGULATIONS OR ORDINANCES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, THE ASSETS ARE BEING SOLD BY SELLER, AND PURCHASER AGREES TO ACCEPT THE PURCHASED ASSETS, IN "AS-IS" AND "WHERE-IS" CONDITION ON THE CLOSING DATE. PURCHASER ACKNOWLEDGES, REPRESENTS AND WARRANTS THAT (I) PURCHASER HAS HAD AN OPPORTUNITY TO MAKE AN INDEPENDENT INVESTIGATION AND EXAMINATION OF THE ASSETS (AND ALL MATTERS RELATED THERETO), AND TO BECOME FULLY FAMILIAR WITH THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, AND (II) SELLER AND ITS EMPLOYEES, AGENTS, MEMBERS, DIRECTORS, AND OFFICERS HAVE NOT MADE AND SHALL NOT MAKE ANY VERBAL OR

3

WRITTEN REPRESENTATIONS, WARRANTIES OR STATEMENTS OF ANY NATURE OR KIND WHATSOEVER TO PURCHASER, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE ABOVE, AND, IN PARTICULAR, EXCEPT AS EXPRESSLY SET FORTH HEREIN, NO REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE OR SHALL BE MADE WITH RESPECT TO (A) THE PHYSICAL CONDITION OR OPERATION OF THE ASSETS, INCLUDING THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS OR CONDITIONS THEREON (INCLUDING THE PRESENCE OF ASBESTOS OR ASBESTOS CONTAINING MATERIALS OR THE RELEASE OR THREATENED RELEASE OF HAZARDOUS SUBSTANCES), (B) THE REVENUES OR EXPENSES OF THE PROPERTY, (C) THE ZONING AND OTHER LEGAL REQUIREMENTS APPLICABLE TO THE PROPERTY OR THE COMPLIANCE OF THE PROPERTY THEREWITH, (D) THE NATURE AND EXTENT OF ANY MATTER AFFECTING TITLE TO THE PROPERTY, (E) THE QUANTITY, QUALITY, OR CONDITION OF THE ASSETS, OR (F) ANY OTHER MATTER OR THING AFFECTING OR RELATING TO THE PROPERTY, OR ANY PORTION THEREOF, THE INTERESTS THEREIN TO BE CONVEYED TO PURCHASER PURSUANT TO THE TERMS OF THE TRANSACTIONS CONTEMPLATED HEREBY. PURCHASER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PORTION OF THIS AGREEMENT.

## ARTICLE 4
## MISCELLANEOUS

4.1 **Entire Agreement**. This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby, and supersedes all prior agreements, arrangements, and understandings relating to the subject matter hereof.

4.2 **Notices**. All notices, payments and other required communications ("Notices") to the parties shall be in writing, and shall be addressed, respectively, as follows:

If to Seller: _____

_____

Attention:_____

If to Purchaser: Bank of America, N.A.
c/o John S. Brannon, Esquire
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: 214.969.1505
Fax: 214.999.1608
Email: john.brannon@tklaw.com

4

All Notices shall be given (i) by personal delivery, or (ii) by electronic communication, with a confirmation sent by registered or certified mail, return receipt requested, or (iii) by registered or certified mail, return receipt requested. All Notices shall be deemed delivered (i) if by personal delivery, on the date of delivery if delivered during normal business hours, and, if not delivered during normal business hours, on the next business day following delivery, (ii) if by electronic communication, on the date of receipt of the electronic communication, and (iii) if solely by mail, on the date of receipt. A party may change its address by Notice to the other party in accordance with this Section 4.2.

    4.3    **Applicable Law**. All questions concerning the construction, validity and interpretation of this Agreement shall be governed by the internal laws, and not the law of conflicts, of the State of Texas.

    4.4    **Attorneys' Fees**. If any legal action is brought by any party hereto, the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorneys' fees in addition to any other relief that may be awarded. For the purposes of this Section, the "prevailing party" shall be the party in whose favor final judgment is entered. If declaratory or injunctive relief alone is granted, the court may determine which, if either, of the parties, is the prevailing party. The amount of reasonable attorneys' fees shall be determined by the court.

    4.5    **Waiver**. The failure of a party to insist on the strict performance of any provision of this Agreement or to exercise any right, power or remedy upon a breach hereof shall not constitute a waiver of any provision of this Agreement or limit the party's right thereafter to enforce any provision or exercise any right.

    4.6    **Severability**. If any term, provision, covenant, or restriction of this Agreement is held by the final, non-appealable order of a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

    4.7    **Amendments**. This Agreement may be amended, modified, or superseded only by written instrument executed by all parties hereto.

    4.8    **Headings**. The Article and Section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent or for any purpose, to limit or define the text of any Article or Section.

    4.9    **Gender and Number**. Whenever required by the context, as used in this Agreement, the singular number shall include the plural and the neuter shall include the masculine or feminine gender, and vice versa.

    4.10    **Counterparts**. This Agreement may be executed in several counterparts, each of which shall be an original and all of which together shall constitute one agreement

068800 000210 DALLAS 2522825.3

binding on all parties hereto, notwithstanding that all the parties have not signed the same counterpart.

**[Remainder of page intentionally left blank; signature page follows]**

6
068800 000210 DALLAS 2522825.3

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first above written.

**Seller:**

**Opus West LP, a Delaware limited partnership**

By: Opus West Corporation, a Minnesota corporation

    By: Phoenix Capital Partners, its Chief Restructuring Officer

By:_____
Name:_____
Title:_____


**Purchaser:**

**BANK OF AMERICA, N.A.**

By: *[signature]*
Name: Casey Carpenter
Title: Vice President

# EXHIBIT "A"

## LAND

All that parcel or parcels of real property located in the Denton County, State of Texas, and more particularly described as follows:

TRACT I: FEE ESTATE

All of Lots 6 and 8, Block 1 and Lots 7 and 8, Block 2, Marketplace at Highland Village, an addition to the City of Highland Village, Denton County, Texas, according to the plat thereof recorded in Cabinet W, Page 594, Plat Records, Denton County, Texas: SAVE AND EXCEPT that portion of Lots 7 and 8, Block 2 conveyed to the City of Highland Village in Right of Way Dedication recorded under Clerk's File No. 2007-99397, Real Property Records, Denton County, Texas.

TRACT II: EASEMENT ESTATE

Those non-exclusive easement rights created in Easements with Covenants and Restrictions Affecting Land, executed by and between Wal-Mart Stores Texas, LP, a Texas limited partnership and Opus West LP, a Delaware limited partnership, dated January 25, 2006, filed for record on January 26, 2006 and recorded in under Document No. 2006-9768, Real Property Records, Denton County, Texas.