Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938

*Counsel for Opus West Corporation,
Opus West Construction Corporation, and
O.W. Commercial, Inc.*

Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 972-755-7100
Facsimile: 972-755-7110

*Counsel for Opus West LP and
Opus West Partners, Inc.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**OPUS WEST CORPORATION**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-34356-hdh-11<br><br>Jointly Administered |

### EXPEDITED JOINT MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (1) ESTABLISHING PROCEDURES GOVERNING THE SALE OF MISCELLANEOUS ASSETS, AND (2) APPROVING CERTAIN PENDING SALES

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby jointly move the Court (the "**Motion**") for entry of an order pursuant to Sections 105 and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002(a)(2), 6004(h), 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (1) establishing certain procedures governing miscellaneous asset sales, (2) approving Pending Sales (defined below) of certain of the Debtors' assets, and (2) providing any additional relief required in order to implement the foregoing. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Opus West Corporation (1533); Opus West Construction Corporation (5917); Opus West LP (5535); Opus West Partners, Inc. (5537); and O.W. Commercial, Inc. (9134).

# I.
## STATUS OF CASE AND JURISDICTION

1. On July 6, 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On July 15, 2009, the United States Trustee appointed the Committee of Unsecured Creditors.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory bases for the relief requested herein are Sections 105(a), 363, 507(a), and 541(b) of the Bankruptcy Code.

# II.
## BACKGROUND

6. Opus West Corporation ("**Opus West**"), with its affiliates, is a full-service real estate development firm that focuses on acquiring, constructing, operating, managing, leasing, and/or disposing of real estate development projects primarily located in the western United States. Although incorporated in Minnesota, Opus West and its affiliates are headquartered in Phoenix, Arizona. With in-house expertise in office, industrial, retail, multifamily, government, and institutional projects, Opus West and its affiliates have developed more than 52.7 million square feet of space since Opus West started operations in 1979. Collectively, as of the Petition Date, the Debtors employ approximately 37 people.

7. Opus West and its affiliates are comprised of various joint ventures and wholly-owned subsidiaries that serve as holding companies, special purpose entities, construction companies, and project-level operating companies. These entities operate on an integrated basis with centralized management and administration in Phoenix. Opus West's debtor affiliates include: Opus West Construction Corporation ("**O.W. Construction**"), O.W. Commercial, Inc. ("**O.W. Commercial**"), Opus West LP ("**OWLP**"), and Opus West Partners, Inc. ("**O.W. Partners**"). O.W. Construction, O.W. Commercial, and O.W. Partners are wholly owned subsidiaries of Opus West. In turn, OWLP is owned by Opus West (1%) and O.W. Partners (99%). Opus West's interests are held 100% by its parent company, Opus Corporation.

8. A more detailed factual background of the Debtors' businesses and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Affidavit of John Greer in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief* filed on the Petition Date and incorporated herein by reference.

## III.
## RELIEF REQUESTED

9. The Debtors remain in possession of certain miscellaneous assets for which the Debtors seek to establish sale procedures related thereto, as described in greater detail below.

10. Prior to the Petition Date, the Debtors routinely and in the ordinary course of business sold or, when necessary, disposed of non-core assets that had little value to their operations. Since the Petition Date, the Debtors have and continue to identify assets that do not add value to their estates. Thus, the Debtors have determined that it is in the best interests of their bankruptcy estates to dispose of certain miscellaneous assets. The Debtors therefore seek an order of this Court (i) establishing certain procedures governing the sale of Miscellaneous Assets (as

defined below), and (ii) approving the proposed sales of certain assets to certain parties, from whom the Debtors have already received offers to buy.

A. **Miscellaneous Assets**.

11. The Debtors have identified a number of miscellaneous assets that can be sold to generate proceeds for their bankruptcy estates. These miscellaneous assets include, but are not limited to, the Debtors' (a) Tools and Equipment (defined below), (b) Office Equipment and Furniture (defined below), and (c) Vehicles (defined below) (collectively, the "**Miscellaneous Assets**"). The Miscellaneous Assets to be sold (a) are not essential to the Debtors' business and (b) are of little value relative to the Debtors' total asset base. Specifically, the Debtors believe that the Miscellaneous Assets have a total value less than $330,000. The Debtors anticipate that authority to sell the Miscellaneous Assets pursuant to the Miscellaneous Asset Sale Procedures (as defined below) will generate net proceeds for their bankruptcy estates.

12. The Debtors have determined that the sale of the Miscellaneous Assets are in the best interests of their estates and are necessary in order to avoid unnecessary costs associated with retaining, maintaining, insuring, storing, and/or liquidating the Miscellaneous Assets by some other means. Therefore, the Debtors respectfully submit that the sale of the Miscellaneous Assets as set forth herein reflects the Debtors' exercise of sound business judgment, is in the best interests of their estates and creditors, and should be granted by the Court.

13. In an effort to streamline the sales process and provide the greatest benefit to the Debtors' bankruptcy estates and their creditors, the Debtors hereby seek the entry of an order establishing certain notice and objection procedures (as described below) (the "**Miscellaneous Asset Sale Procedures**") permitting the Debtors to sell the Miscellaneous Assets upon no objection from key participants, or as set forth below. This streamlined process is especially important to the

Debtors under their present circumstances, because many of the Miscellaneous Assets are still in locations and/or offices that the Debtors have vacated. Disposing of these Miscellaneous Assets as soon as possible is a vital step toward the Debtors' moving out of the various office spaces permanently. The Debtors further seek approval of certain Pending Sales (defined below).

Sale of Tools and Equipment

14. Mr. Bill Coleman ("**Coleman**"), a former employee of the Debtors, is familiar with the various construction small tools and equipment that the Debtors seek to sell (collectively, the "**Tools and Equipment**"). A listing of the miscellaneous Tools and Equipment that the Debtors seek authority to sell in this Motion is attached hereto as Exhibit "A" and is incorporated herein by reference.

15. The Debtors seek this Court's authority to retain Coleman to market and sell the Tools and Equipment for sixty (60) days after entry of an order approving the Miscellaneous Asset Sale Procedures set forth herein (the "**Tools and Equipment Sale Deadline**"). The Debtors reserve the right to extend the Tools and Equipment Sale Deadline upon approval of this Court, or upon written agreement between the Committee and the Debtors. For each sale of Tools and Equipment that Coleman completes, the Debtors seek to pay Coleman a commission of 10% of the sale price of such Tools and Equipment, as set forth in that certain *Consulting Agreement* between Opus West Construction Corporation and Bill Coleman, incorporated herein, and attached hereto as Exhibit "B."

16. If, following the Tools and Equipment Sale Deadline, there are Tools and Equipment that remain unsold, the Debtors reserve the right to seek authority to further dispose of the Tools and Equipment.

Sale of Office Equipment and Furniture

17. The Debtors additionally own certain office equipment and office furniture, as set forth in Exhibit "C" attached hereto, and incorporated herein by reference (collectively, the "**Office Equipment and Furniture**") that they seek to sell. The Office Equipment and Furniture is currently located at the Debtors' offices in Phoenix, Arizona. The Debtors have determined, in the exercise of their business judgment, that disposing of the Office Equipment and Furniture is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

18. Therefore, the Debtors seek authority to sell the Office Equipment and Furniture in a manner that will provide the greatest return to the Debtors' bankruptcy estates and their creditors. The Debtors seek authority to sell the Office Equipment and Furniture by (1) contacting potential buyers directly; (2) contacting auctioneer(s) who have experience in conducting auctions of assets similar to the Office Equipment and Furniture; and/or (3) reaching an agreement with the landlord of the Debtors' offices in Phoenix, Arizona, whereby the landlord's post-petition administrative claim may be reduced by the value of the certain Office Equipment and Furniture that the Debtors may sell to the landlord.

19. The Debtors seek authority to pursue their efforts to sell the Office Equipment and Furniture for sixty (60) days following entry of an order approving this Motion (the "**Office Equipment and Furniture Sale Deadline**"). The Debtors reserve the right to extend the Office Equipment and Furniture Sale Deadline upon approval of this Court, or upon written agreement between the Committee and the Debtors. Upon the expiration of the Office Equipment and Furniture Sale Deadline, as may be extended, the Debtors anticipate seeking authority to abandon or otherwise dispose of any remaining Office Equipment and Furniture.

Sale of Vehicles

20. The Debtors own approximately twenty-one vehicles (the "**Vehicles**") as set forth on Exhibit "D" incorporated herein by reference, and attached hereto, that the Debtors also seek authority to sell. The Vehicles are located in Irvine, California; Pleasanton, California; Dallas, Texas; Houston, Texas; and Phoenix, Arizona.

21. The Debtors seek authority to sell the Vehicles by contacting companies that specialize in purchasing pre-owned vehicles similar to the Debtors' Vehicles. The Debtors request authority to complete sales of the Vehicle(s) to the company, or combination of companies, that make the highest offer to the Debtors, in a manner that will maximize the return to the bankruptcy estates for the sale of the Vehicles. Upon the sale of a Vehicle(s), the buyer of the Vehicle(s) will pay all costs related to transfer of title of the Vehicle(s), including sales tax.

22. The Debtors believe, in the exercise of their business judgment, that disposition of the Vehicles as described herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**B.  Pending Sales.**

23. Since the Petition Date, the Debtors have received offers to purchase certain of their assets, and/or have entered into contracts to sell certain of its assets, as set forth in greater detail below. In every instance, the applicable sale agreement provides that completion of the sale is dependent on this Court's approval of the sale.

24. The Debtors believed that entering into each sale agreement prior to (though dependent on) court approval was necessary because the market for used office furniture and equipment in Phoenix, Arizona, where these pending sales are taking place, is flooded with similar assets. In short, as the result of the current economic downturn, the supply of such assets far out-

strips the demand. With respect to each pending sale, the Debtors entered into the sale agreements because time was of the essence, and the Debtors believe that if they had not entered into those sale agreements, they would have lost the sale to particular counter-party.

25. The Debtors believe that each pending sale is in the best interests of the Debtors' bankruptcy estates, their creditors, and other parties-in-interest. None of the potential purchasers are insiders of the Debtors. The potential sale price is fair under the circumstances. The Debtors believe that it would this Court's approval of each pending sale would be in the best interests of the Debtors' bankruptcy estates, their creditors, and other parties-in-interest.

a. **Interfaith Counseling**

26. The Debtors have received an offer to sell certain office furniture and computer equipment (collectively, the "**Interfaith Counseling Assets**") as set forth in that certain agreement between Interfaith Counseling ("**Interfaith Counseling**") and the Debtors, incorporated herein by reference, and attached hereto as Exhibit "E" (the "**Interfaith Counseling Offer**"). Interfaith Counseling is a not-for-profit organization dedicated to providing mental health counseling services in Maricopa County, Arizona; it has offered a total of $12,337.50 for the purchase of the Interfaith Counseling Assets.

27. The Debtors have previously delivered the Interfaith Counseling Assets to Interfaith Counseling, because Interfaith Counseling needed them immediately; the Debtors believed that if they had not delivered those assets, there was a great likelihood that the sale would have fallen through. The urgency of Interfaith Counseling's need did not leave the Debtors with sufficient time to seek this Court's approval of the sale prior to delivery of the Interfaith Counseling Assets to Interfaith Counseling. The Interfaith Counseling Offer expressly states that completion of the sale depends on this Court's approval of such sale.

28. If the Court does not approve the Debtors' sale to Interfaith Counseling, the Debtors will have to undertake the heavy burden and high cost of picking up those sold assets again from Interfaith Counseling. The Debtors submit that approving the proposed sale to Interfaith Counseling is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

**b.     The Richard Solomon Group**

29. The Debtors seek authority to sell certain office furniture and computer equipment (collectively, the "**Richard Solomon Assets**") to the Richard Solomon Group (the "**Richard Solomon Group**") as set forth in that certain agreement between the Richard Solomon Group and Opus West Corporation, incorporated herein, and attached hereto as Exhibit "F" (the "**Richard Solomon Offer**"). The Richard Solomon Offer provides that completion of the sale depends on receiving this Court's approval of this Motion. The Richard Solomon Group has offered approximately $2,610 in exchange for the Richard Solomon Assets.

30. The Richard Solomon Group provides real estate and construction consulting services and at least one of the principals of the Richard Solomon Group is a former, non-insider employee of the Debtors.

**c.     Northmarq**

31. The Debtors seek authority to sell certain office furniture (collectively, the "**Northmarq Assets**") to Northmarq ("**Northmarq**") as set forth in that certain offer letter from Northmarq to the Debtors, incorporated herein by reference, and attached hereto as Exhibit "G" (the "**Northmarq Offer**"). Northmarq has offered to pay $1,830 in exchange for the Northmarq Assets. Northmarq is involved in property management of commercial real estate projects. Certain of

Northmarq's current employees are former non-insider employees of Opus companies that are or were related to the Debtors.

32. The Northmarq Offer provides that the completion of the sale depends on this Court's approval of the sale to Northmarq; the Debtors entered into the sale agreement with Northmarq prior to getting this Court's approval, because they believed that waiting for approval would jeopardize the completion of the sale.

**d.    Kehoe Sale**

33. The Debtors have received an offer from Mr. Jim Kehoe ("**Kehoe**"), a former non-insider employee of the Debtors, for the purchase and sale of a 2008 Ford F-150 pick-up truck, as set forth in the purchase offer from Kehoe, incorporated herein by reference, and attached hereto as on Exhibit "H" (the "**Kehoe Offer**"). The proposed purchase price for the truck is $10,000; according to various sources, the fair market value of a similar truck is between $10,375 and $10,825. Although the proposed sale price to Kehoe is less than the Kelly Blue Book value, the Debtors believe that the cost of further attempts to find a purchaser who will buy this truck for a higher price would be greater than the benefit, if any, that the bankruptcy estates, creditors, and other parties-in-interest may get.

34. The Kehoe Offer states that the completion of the sale depends on this Court's approval of such sale.

35. The pending transactions with Interfaith Counseling, the Richard Solomon Group, Northmarq, and Kehoe are collectively referred to as the "**Pending Sale Transactions**." The Interfaith Counseling Offer, the Richard Solomon Offer, the Northmarq Offer and the Kehoe Offer are collectively referred to as the "**Pending Offers**." The Debtors request this Court to approve the Pending Sale Transactions.

**EXPEDITED JOINT MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (1) ESTABLISHING PROCEDURES GOVERNING THE SALE OF MISCELLANEOUS ASSETS, AND (2) APPROVING CERTAIN PENDING SALES - Page 10**
*DAL 77,632,988v4*

Notice of Proposed Miscellaneous Asset Sales

36. After the Debtors enter into a contract or contracts contemplating a transaction, or otherwise anticipate a transaction, that is subject to these Miscellaneous Asset Sale Procedures (a "**Proposed Sale**"), and if that Proposed Sale of Office Equipment and Furniture is for more than $2,500, or if a Proposed Sale of Tools and Equipment is for more than $5,000, then the Debtors will file with the Court a notice of such Proposed Sale (a "**Sale Notice**") and serve the Sale Notice by overnight delivery, facsimile, or electronic transmission on each of the parties set forth in the most-current Official Service List filed with this Court in these cases.

37. If a Proposed Sale of Office Equipment and Furniture is for up to and including $2,500 or less, or a Proposed Sale of Tools and Equipment is for up to and including $5,000 or less, then the Debtors will provide no further notice of such Proposed Sale to the Court or to other parties-in-interest and no further order of this Court will be required to complete such sale.

38. The Debtors will provide a Sale Notice regarding each Proposed Sale of the Debtors' Vehicles.

39. The Miscellaneous Asset Sale Procedures shall not apply to any of the Pending Sale Transactions.

Contents of Sale Notice

40. The Sale Notice will include the following information:

   a. A description of the assets that are the subject of the Proposed Sale, the location of the assets, and the economic terms of the sale;

   b. The identity of any non-debtor party to the Proposed Sale and any relationship between the party and the Debtors (*i.e.*, employee, affiliate, etc.);

   c. The identity of any known party holding liens, claims, encumbrances, or other interests in the assets, and a statement indicating that all such liens, claims, encumbrances, or interests are capable of monetary satisfaction or that the parties have consented to the Proposed Sale; and

    d. The procedures by which parties may object to the Proposed Sale described below.

Objection Procedures

  41. Interested parties may object to a Proposed Sale by filing an objection with the Court and serving each of the parties set forth in the then-current Official Service List as filed with the Court in these cases, via overnight delivery, facsimile, or electronic transmission within five (5) business days following service of the Sale Notice (an "**Objection**"). Any such Objection must be in writing and must state with specificity the grounds for the objection.

  42. If an Objection to a Proposed Sale is properly filed and served: (a) the Objection will be deemed to be a request for a hearing on the Proposed Sale; and (b) the Proposed Sale may not proceed absent written withdrawal of the Objection or entry of a Court order specifically approving the Proposed Sale.

  43. If no Objection is properly and timely filed and served consistent with the Miscellaneous Asset Sale Procedures, then the Debtors shall be authorized to complete the Proposed Sale without any further action or order of this Court.

Conditions of Sale

  44. All buyers will acquire assets sold by the Debtors pursuant to the Miscellaneous Asset Sale Procedures "AS IS, WHERE IS" without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any other purpose; provided that, pursuant to Section 363(f) of the Bankruptcy Code, any buyer will take title to the assets free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests, if any, to attach to the proceeds of the sale of the assets.

Monthly Reporting of Sales

45. In their Monthly Operating Reports, the Debtors will describe the assets that they have sold in that month, and will provide details regarding the purchaser of the assets, the price at which the assets were sold, and the date on which such assets were sold.

C. **Necessity for Relief**

46. Filing separate motions under Section 363(b)(1) of the Bankruptcy Code for the sale of each Miscellaneous Asset would be both burdensome to the Court and costly to the Debtors' estates and creditors. Without the Miscellaneous Asset Sale Procedures, the cost and delay associated with filing such separate motions with the Court could significantly diminish or entirely eliminate the economic benefits of the transactions, and reduce the overall recovery for the Debtors' estates. For these reasons, the Debtors respectfully submit that the Miscellaneous Asset Sale Procedures will allow the Debtors to maximize the value of these assets and, as such, are in the best interests of the Debtors and their bankruptcy estates.

IV.
**BASIS FOR RELIEF**

A. **Requested Sales and Sale Procedures Are Reasonable and Appropriate**

47. Section 363(b)(1) of the Bankruptcy Code provides that a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have previously held that a sale outside the ordinary course of business in a Chapter 11 case is appropriate where the Court finds "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith." *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also, In re Abbotts Diaries of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). Courts in a number of other jurisdictions have similarly so held. *See e.g., Stephens Indus. Inc. v. McClung*, 789 F.2d 386,

390 (6th Cir. 1986); *In re Continental Air Lines. Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1066 (2d Cir. 1983). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986).

48. Although Bankruptcy Rule 2002(a)(2) generally requires 20 days notice to parties-in-interest of proposed sales of estate property outside the ordinary course of business, the rule also permits such transactions to move forward on shortened notice "for cause shown." Fed. R. Bankr. Proc. 2002(a)(2). Section 102(1) of the Bankruptcy Code requires that the level of notice and opportunity for a hearing be "appropriate in the particular circumstances" of the case. 11 U.S.C. § 102(1). Similarly, Courts have held that notice is appropriate under Section 102(1) of the Bankruptcy Code where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997) (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

49. The Debtors respectfully submit that the notice and objection procedures contained in the proposed Miscellaneous Asset Sale Procedures are justified under the circumstances and that these procedures are designed to maximize the value realized from the sales of the Miscellaneous

Assets. Because the proposed asset sales are of limited value relative to the Debtors' total asset base, the usual process of filing a motion with the Court for each individual sale would impose significant burdens on the Court and parties-in-interest and would add to the costs in this case.

50. Additionally, the Debtors believe that the manner of notice proposed in the Miscellaneous Asset Sale Procedures is appropriate and preserves parties' due process rights. The Debtors will serve a Sale Notice on each of the parties set forth in the Service List attached to this Motion and the contents of the Sale Notice (and the objection procedures related thereto) will provide each of the parties with sufficient information for making a determination as to whether or not an objection should be made by such party in light of the circumstances. Furthermore, pursuant to the Miscellaneous Asset Sale Procedures, a Proposed Sale will not be consummated until the Court approves the Proposed Sale, as set forth herein. As such, all of the key constituencies in these cases and any party whose rights may be effected by a sale will receive adequate notice.

51. Finally, as noted above, the "notice and a hearing" requirement contained in Section 363(b)(1) of the Bankruptcy Code is satisfied absent a hearing where there is an opportunity for a hearing and no party-in-interest timely requests a hearing.

52. The Debtors respectfully submit that the Miscellaneous Asset Sale Procedures set forth herein are fair and equitable, that sound business justifications necessitate approval of the procedures, and that the procedures have been proposed in good faith.

**B.     Assets Can be Sold Free and Clear of Interests**

53. Section 363(f) of the Bankruptcy Code permits a debtor to sell estate property free and clear of another party's interest in the property where:

    a.    Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    b.    Such entity consents;

c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d. Such interest is in bona fide dispute; or

e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30. Under the Miscellaneous Asset Sale Procedures set forth herein, assets encumbered by interests held by other parties may be sold only if the interests are capable of monetary satisfaction or the holders of the interests consent to the Proposed Sale. Moreover, the Debtors propose that such interests attach to the proceeds of the sales. As such, the requirements of Section 363(f) of the Bankruptcy Code will be satisfied for any Proposed Sale free and clear of liens, claims, encumbrances, and other interests.

## V.
## REQUEST FOR WAIVER OF STAY

31. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property of the estate "is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Banks. Proc. 6004(h). However, based upon the facts and circumstances set forth herein, the Debtors submit that ample cause exists to justify a waiver of the ten (10) day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h), 7062 and 9014.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) approving the Miscellaneous Asset Sale Procedures, (ii) approving the Pending Sale Agreements, and (iii) granting such other and further relief as is just and proper.

Dated: September 14, 2009

Respectfully Submitted,

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
State Bar No. 10655020
Bruce H. White
State Bar No. 21288850
Bryan L. Elwood
State Bar No. 24029535
GREENBERG TAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214-665-3600
Facsimile: 214-665-5938
E-mail: jessupc@gtlaw.com
whiteb@gtlaw.com
elwoodb@gtlaw.com

*Counsel for Opus West Corporation,
Opus West Construction Corporation, and
O.W. Commercial, Inc.*

-and-

/s/ Peter Franklin
Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 972-755-7100
Facsimile: 972-755-7110
E-mail: pfranklin@fslhlaw.com
dskierski@fslhlaw.com
elovall@fslhlaw.com

*Counsel for Opus West LP and
Opus West Partners, Inc.*